## Exhibit B

**Engagement Letter**

As of July 18, 2019

**Private and Confidential**

Curtis G. Solsvig III
Chief Executive Officer
uBiome Inc.
360 Langton St
San Francisco, CA 94103

Dear Curt:

This letter agreement (this "***Agreement***"), entered into as of July 12, 2019 (the "***Effective Date***"), confirms the understanding and agreement that uBiome Inc. (collectively, with its subsidiaries and its controlled affiliates, the "***Company***") has engaged GLC Advisors & Co., LLC and GLCA Securities, LLC (collectively, "***GLC***") to act as its exclusive investment banker to provide investment banking services as set forth below.

1.  <u>Scope of Engagement</u>:  On the terms and subject to the conditions of this Agreement, GLC will provide to the Company the following financial and capital market related advisory services, as requested by the Company:

    (a) to the extent necessary or appropriate, reviewing the Company's assets, financial condition and business;

    (b) assisting the Company with evaluating the Company's financing alternatives based upon the Company's liquidity projections;

    (c) determining a range of enterprise values for the Company in connection with a Transaction (defined below);

    (d) advising and assisting the Company in examining, analyzing, developing, structuring and negotiating the financial aspects of any potential or proposed strategy for a Transaction;

    (e) assisting the Company in planning for dialog and negotiations with creditors for a potential transaction; including with respect to the creditor due diligence process and negotiations with various creditor constituencies;

    (f) providing advice and testimony regarding financial matters related to any Transaction(s) including but not limited to the valuation range of the Company on a reorganized basis, if necessary;



GLC Advisors & Co.
**GLCA Securities, LLC**

(g) attending meetings of and advising and otherwise communicating with the Company's Board of Directors, its officers and employees, its other professionals, creditor groups, and other interested parties, as GLC and the Company determine to be necessary or desirable; and

(h) providing such other financial advisory services as may be agreed in writing between GLC and the Company.

As used in this Agreement, the term "***Transaction***" shall mean, the consummation of any of the following whether through one or more transaction(s) or a series of transactions, (i) any new debt and/or equity financing, including a rights offering or the issuance or placement, whether public or private, of equity, equity-linked or debt securities, instruments or obligations (including, without limitation, any convertible securities, preferred stock, unsecured, non-senior or subordinated debt securities, and/or senior notes or bank debt or other financing, including any "debtor in possession financing" or "exit financing" in connection with a chapter 11 plan or any bankruptcy case ("***Bankruptcy Case(s)***") filed by or against one or more of the entities comprising the Company under chapter 11 of title 11 of the United States Code (the "***Bankruptcy Code***"), whether from new or existing financing providers (a "***Financing Transaction***"); (ii) any merger, consolidation, joint venture, partnership, spin-off, split-off, business combination, tender or exchange offer, acquisition, sale, distribution, transfer or other disposition of assets or equity interests, or similar transaction, involving a material portion of the business, assets or equity interests of the Company, in one or more transactions, including any sale under Section 363 of the Bankruptcy Code (each, a "***Sale Transaction***"); or (iii) any restructuring, reorganization and/or recapitalization, including through a plan of reorganization or liquidation (a "***Plan***")) and/or pursuant to a sale under Section 363 of the Bankruptcy Code, (each, a "***Restructuring***") of the Company's outstanding equity, indebtedness (including bank debt, bond debt, and other on and off balance sheet indebtedness), leases (both on and off balance sheet), put rights associated with outstanding securities, or other liabilities or obligations (collectively, the "***Existing Obligations***") that is achieved, without limitation, through (1) a solicitation of waivers, consents, acceptances or authorizations from the holders of any Existing Obligations; (2) rescheduling of the maturities or other terms of any Existing Obligations; (3) a material amendment or modification of the terms of any Existing Obligations; (4) conversion of any Existing Obligations into equity (other than a conversion on existing terms); (5) an exchange offer involving the issuance of new securities in exchange for any Existing Obligations; (6) any change of control transaction, sale, acquisition or merger; (7) any refinancing or reinstatement; (8) waiver, forbearance or other material modification of any financial or operating covenant, or any other provision in respect of any Existing Obligations, or (9) other similar transaction or series of transactions.

It is expressly agreed that, GLC will not evaluate or attest to the Company's internal controls, financial reporting, illegal acts or disclosure deficiencies and GLC shall be under no obligation to provide formal fairness or solvency opinions with respect to any Bankruptcy Case(s) or other Transaction contemplated thereby or incidental thereto.

In rendering its services pursuant to this Agreement, and notwithstanding anything to the contrary herein, GLC is not assuming any responsibility for any decision to pursue (or not to pursue) any


GLC Advisors & Co.
**GLCA Securities, LLC**

business strategy or to effect (or not to effect) any Transaction.  GLC shall not have any obligation or responsibility to provide legal, regulatory, accounting, tax, audit, "crisis management" or business consultant advice (unless set forth above in the Scope of Engagement) or services hereunder, and shall have no responsibility for designing or implementing operating, organizational, administrative, cash management or liquidity improvements.

The advisory services and compensation arrangements set forth herein do not encompass other financial advisory services not set forth in this Paragraph 1.  If the Company and GLC later determine to expand the scope of services to include other services not otherwise set forth herein, including, if applicable, services required to be performed by a registered investment advisor, such future agreement will be the subject of a further and separate written agreement of the parties.

2.  <u>Fees and Expenses</u>: For GLC's services hereunder, the Company agrees to pay to GLC the following non-refundable fees in cash:

(a) <u>Monthly Advisory Fees</u>: a monthly advisory fee of $125,000 (each, a "***Monthly Advisory Fee***"), payable in advance for the period commencing on the Effective Date, with the first payment due upon execution of this Agreement and subsequent payments due on each monthly anniversary of the Effective Date; <u>provided</u>, that GLC will credit (without duplication) 50% of all Monthly Advisory Fees actually paid to GLC against any Restructuring Transaction Fee that is due to be paid to GLC.  The Monthly Advisory Fee shall be deemed earned in full upon receipt.

(b) <u>Financing Transaction Fee</u>: a fee payable directly out of the gross proceeds of any Financing Transaction equal to: (i) 1.5% of the aggregate principal face amount of any secured debt raised, including, without limitation, any debtor-in-possession or exit financing raised; (ii) 3.0% of the aggregate principal face amount of any unsecured debt raised; and (iii) 5% of any equity or equity linked securities raised (each, a "***Financing Transaction Fee***"); **provided, however,** if the Company's current investors or lenders participate in a Financing Transaction, GLC shall be entitled to 50% of the Financing Transaction Fee owing to their participation. For greater certainty, the term "raised" includes all amounts committed.  For the avoidance of doubt, no Financing Transaction Fee will be due on account of the roll-over of debtor-in-possession financing into exit financing.

(c) <u>Sale Transaction Fee</u>: a fee of 1.5% of the Aggregate Consideration (as defined on Schedule II) and, to the extent applicable, payable directly out of the gross proceeds of the Restructuring (together, a "***Sale Transaction Fee***").

(d) <u>Restructuring Transaction Fee</u>: a fee of $1,500,000 upon the consummation of any Restructuring and, to the extent applicable, payable directly out of the gross proceeds of the Restructuring (the, "***Restructuring Transaction Fee***").



(e) <u>Credit</u>: A one-time credit of 100% of any Sale Transaction Fees actually paid by the Company will be applied against the Restructuring Transaction Fee, on a dollar for dollar basis up to 100% of the Restructuring Transaction Fee.

(f) <u>Multiple Transaction Fees</u>: The Company and GLC each acknowledge and agree that more than one Transaction fee may be payable to GLC under subparagraphs 2(b), 2(c), and/or 2(d) hereof.  For greater certainty, if, for example, there is a sale or similar transaction of all or substantially all of the business, assets or equity interests of the Company, in one or more transactions, including any sale under Section 363 of the Bankruptcy Code, GLC shall be entitled to both a Sale Transaction Fee and a Restructuring Transaction Fee, subject to Paragraph 2(e) above.

(g) <u>Expense Reimbursement</u>: GLC shall be entitled to monthly reimbursement from the Company of reasonable and documented out-of-pocket expenses incurred in connection with the services to be provided under this Agreement (including for GLC's reasonable and documented out-of-pocket fees and expenses for outside legal counsel incurred in connection with this Agreement, including the negotiation and performance of this Agreement and the matters contemplated hereby and, in connection with any Bankruptcy Case(s), GLC's retention in such case(s) and any fee issues or disputes that may arise, including defending its fee applications), whether or not a Transaction occurs or is consummated.  In connection with the foregoing, the Company shall, upon execution of this Agreement, provide GLC with an advance retainer in the amount of $50,000 (the "***Expense Retainer***").  The Expense Retainer will be maintained throughout the engagement and returned to the Company upon completion of GLC's services.  GLC reserves the right to apply the Expense Retainer to outstanding statements in the event that the Company fails to make monthly payments in accordance with this Paragraph 2(g), and the Company shall replenish the Expense Retainer promptly thereafter, <u>provided</u> that GLC shall have provided the Company with an invoice or other similar documentation with reasonable detail of such expenses.

3. <u>Company Information</u>:

(a) The Company will provide GLC with access to management and other representatives of the Company, as reasonably requested by GLC.  The Company will furnish GLC with such information as GLC believes appropriate to its assignment (all such information so furnished being the *"Information"*).  The Company recognizes and confirms that GLC: (i) will use and rely on the accuracy and completeness of the Information and on information available from generally recognized public sources without independently verifying the same; (ii) does not assume responsibility for the accuracy, completeness or reasonableness of the Information and such other information; and (iii) will not make an appraisal of any assets or liabilities (contingent or otherwise) of the Company or a potential transaction party.  To the best of the Company's knowledge, the Information to be furnished by or on behalf of the Company, when delivered, will be true and correct in all material respects and will not contain any material misstatement of fact or omit to



**GLCA Securities, LLC**

state any material fact necessary to make the statements contained therein not misleading. The Company will promptly notify GLC if it learns of any material inaccuracy or misstatement in, or material omission from, any Information previously delivered to GLC.

(b) The Company authorizes GLC to confidentially provide materials regarding the operations, financial status, and legal standing of the business (as such documents may be amended or supplemented and including any information incorporated therein by reference, the "***Information Memorandum***") and other pertinent Information to prospective investors and other purchasers pursuant to a properly executed non-disclosure agreement approved by the Company and agrees not to transmit the Information Memorandum to prospective investors or other purchasers without GLC's prior approval. The Company will be solely responsible for the contents of the Information Memorandum and any and all other written or oral communications provided by or on behalf of the Company to any actual or prospective investor or other purchaser. The Company represents and warrants to GLC that the Information Memorandum and such other communications (whether written or oral) (which shall be deemed to include the Company's public filings), when supplied and through the closing of such Transaction, will not contain any untrue statement of a material fact or omit to state a material fact necessary to make the statements therein not misleading.

(c) In the event that the Company, its controlling equity holders and/or its management receives any inquiry regarding a Transaction from any party, the Company shall promptly inform GLC of such inquiry so that GLC can assist the Company in evaluating such party and its interest in a Transaction and in any resulting negotiations.

4. <u>Term of Agreement</u>: This Agreement may be terminated at any time by GLC or the Company on ten (10) days' prior written notice to the other. Any termination or expiration of this Agreement shall not affect any provisions that survive the termination hereof, including, (i) the indemnification, reimbursement, contribution and other obligations set forth in this Agreement, including <u>Schedule I</u>; and (ii) GLC's right to receive payment of fees earned and expenses incurred by GLC pursuant to Paragraph 2 hereof through the date of termination, and the Company shall immediately pay or cause to be paid all such reasonable fees and expenses due and owing.

Additionally, in the event of any termination of this Agreement by a party hereto (other than (i) GLC, unless GLC has terminated the Agreement with good Cause (as defined below) or (ii) the Company for good Cause), GLC shall be entitled to full payment of all fees contemplated by Section 2 (other than Monthly Advisory Fees and Expense Reimbursement, in each case for amounts incurred after termination) during the Tail Period in respect of any Restructuring, Sale and/or Financing Transaction referred to in Paragraph 2 if at any time prior to the expiration of twelve (12) months after the termination of GLC's engagement hereunder, (i) a Restructuring, Sale and/or Financing Transaction is or are consummated, as applicable, or (ii) the Company files a Plan or enters into a letter of intent or any definitive agreement that subsequently results in the consummation of a Restructuring, Sale and/or Financing Transaction at any time (including after the 12 month period), (the "***Tail Period***").



**GLCA Securities, LLC**

The Tail Period shall automatically terminate upon payment of the Restructuring Transaction Fee, if any.  For greater certainty, the Tail Period shall apply to each type of Transaction and separate fees shall be payable for each type of Transaction.  As used herein, "Cause" means any action or failure to act by GLC or the Company, as the context requires, that constitutes bad faith, gross negligence or wilful misconduct; <u>provided</u> that if GLC obtains a final order not subject to appeal that it did not act with bad faith, gross negligence or wilful misconduct in the performance of its services under this Agreement, GLC will remain entitled to its fees and expenses hereunder.

5. <u>Bankruptcy Court Approval</u>:  In connection with any Bankruptcy Case(s), the Company will use commercially reasonable efforts to obtain an order of the applicable bankruptcy court (the "**Retention Order**") authorizing the Company to retain GLC pursuant to the terms of this Agreement *nunc pro tunc* to the bankruptcy petition filing date, as a professional person pursuant to, and subject to the standard of review of, Section 328(a) of the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure and applicable local rules and orders and not subject to any other standard of review under Section 330 of the Bankruptcy Code.  The Company shall submit GLC's employment application as soon as practicable and use its commercially reasonable efforts to cause such application to be considered on the most expedited basis.  The employment application and the proposed Retention Order shall be provided to GLC in advance of filing, and must be acceptable to GLC in its sole discretion.  The Company shall use commercially reasonable efforts to include in the Retention Order, among other things, (i) GLC shall be authorized to keep time records in half hour increments for work performed hereunder; and (ii) GLC's time records identify only general categories of work performed and indicate the amount of time expended by GLC's professionals in connection with each such category.  GLC shall have no obligation to provide services under this Agreement unless GLC's retention under this Agreement is approved pursuant to Section 328(a) of the Bankruptcy Code by final, non-appealable order of the applicable bankruptcy court and the Retention Order is acceptable to GLC in its sole discretion.  GLC acknowledges that in the event that the applicable bankruptcy court approves its retention by the Company pursuant to the application process described in this paragraph, payment of GLC's fees and expenses shall be subject to:  (i) the jurisdiction and approval of the bankruptcy court under Section 328(a) of the Bankruptcy Code and any Retention Order; (ii) any applicable fee and expense guidelines and/or orders of the bankruptcy court; and (iii) any requirements governing applications for approval of payment of interim and final fees.  The Company agrees that GLC's fees and expenses hereunder shall be entitled to the benefits of any "carve-outs" for professional fees and expenses in effect in the Bankruptcy Case(s) pursuant to one or more financing orders entered by the applicable bankruptcy court.  Prior to commencing any Bankruptcy Case(s), the Company shall pay all invoiced amounts, whether for fees or expense reimbursements or otherwise, to GLC by wire transfer of immediately available funds.

6. <u>Reasonableness of Fees</u>: The Company acknowledges that it believes that GLC's general restructuring experience and expertise, its knowledge of the capital markets and its merger and acquisition capabilities will inure to the benefit of the Company in pursuing any Transaction, that the value to the Company of GLC's services derives in substantial part from that experience and expertise and that, accordingly, the structure and amount of the advisory fees to be paid to GLC hereunder are reasonable regardless of the number of hours to be expended by GLC's professionals in the performance of the services to be provided hereunder.  Each of the parties hereto acknowledges that



**GLC Advisors & Co.**
**GLCA Securities, LLC**

a substantial professional commitment of time and effort will be required of GLC and its professionals hereunder, and that such commitment may foreclose other opportunities for GLC. Moreover, the actual time and commitment required for the engagement may vary substantially, creating "peak load" issues for GLC. Given the numerous issues which may arise in engagements such as this, GLC's commitment to the variable level of time and effort necessary to address such issues, the expertise and capabilities of GLC that will be required in this engagement, and the market rate for GLC's services of this nature, whether in-court or out-of-court, the parties agree that the fee arrangement provided for herein is reasonable, fairly compensates GLC, and provides the requisite certainty to the Company.

7. <u>Confidential Information</u>: GLC acknowledges that, in connection with the services to be provided pursuant to this Agreement, certain confidential, non-public and proprietary information concerning the Company and the Transaction(s) ("***Confidential Information***") has been or may be disclosed by the Company, or its employees, directors, officers, affiliates, attorneys, agents and advisors (collectively, "***Representatives***") to GLC or any of its Representatives. GLC agrees that, without the Company's prior consent, no Confidential Information will be disclosed, in whole or in part, to any person other than GLC and its Representatives, the Company and its Representatives, or as may be required by law or regulatory authority. The term "*Confidential Information*" does not include any information: (i) that was already in the possession of GLC or any of its Representatives, or that was available to GLC or any of its Representatives on a non-confidential basis, prior to the time of disclosure to GLC or such Representatives; (ii) obtained by GLC or any of its Representatives from a third person which, insofar as is known to GLC or such Representatives, is not subject to any prohibition against disclosure; (iii) which was or becomes generally available to the public through no fault of GLC or any of its Representatives; (iv) which was or is independently developed by GLC or any of its Representatives without violating any confidentiality obligations under this paragraph. If GLC becomes required by legal process or regulatory authority to disclose any Confidential Information, if permitted, prompt notice thereof shall be given to the Company. In addition, neither GLC nor any of its Representatives will oppose action by the Company to obtain an appropriate protective order or other reliable assurance that such confidential treatment will be so accorded and GLC and its Representatives shall reasonably cooperate, at the Company's expense, with the Company to obtain such order or other assurance. GLC's obligations under this Paragraph 7 shall remain in effect for a period of one (1) year after the Effective Date of this Agreement.

8. <u>Nature of Services; Use of Advice</u>:

    (a) The Company acknowledges and agrees that GLC has been retained to act solely as an advisor to the Company, and not as an advisor to any other person, and the Company's engagement of GLC is not intended to and does not confer rights upon any person (including shareholders, employees or creditors of the Company) not a party hereto as against GLC or its affiliates, or their respective directors, officers, employees or agents, successors or assigns. GLC shall act as an independent contractor under this Agreement, and not in any other capacity including as a fiduciary, and any duties arising out of its engagement shall be owed solely to the Company. Any advice rendered pursuant to this Agreement is intended solely for the use of



**GLCA Securities, LLC**

the Company in considering the matters to which this Agreement relates, and such advice may not be relied upon by any other person or used for any other purpose.

(b) If appropriate, in connection with providing the services to be provided by GLC under this Agreement, each party hereto acknowledges and agrees that GLC may, without further approval or consent from any party hereto other than as described in this paragraph, utilize the services of GLC Investment Advisors, LLC (together with its subsidiaries, if appropriate, "***GLCIA***") with respect to any services required to be performed by a registered investment advisor, and in such case, the references herein to GLC shall include GLCIA, and GLCIA shall have the benefit of and be entitled to rely on the provisions hereof, including, without limitation, the indemnity provided under Schedule I hereto, with the same force and effect as if GLCIA was a party hereto.  All fees and expenses payable under this Agreement shall continue to be paid to GLC and no additional fees shall be paid to GLCIA by the Company in connection with the foregoing.

(c) Any advice rendered by or other materials prepared by, or any communication from, GLC may not be disclosed, in whole or in part, to any third party, or summarized, quoted from, or otherwise referred to in any manner, without the prior written consent of GLC.  In addition, the terms of this Agreement shall not be referred to without GLC's prior written consent.

9. Indemnification: The Company, jointly and severally, shall provide indemnification, contribution and reimbursement as set forth in Schedule I hereto.  The terms and provisions of Schedule I are an integral part hereof, are hereby incorporated by reference, are subject in all respects to the provisions hereof and shall survive any termination or expiration of this Agreement.  Further, if an Indemnified Person (as defined in Schedule I) is requested or required to appear as a witness or receives any documents document requests in any Action (as defined in Schedule I) that is brought by or on behalf of or against the Company or that otherwise relates to this Agreement or the services rendered by GLC hereunder, the Company, jointly and severally, shall reimburse GLC and the Indemnified Person for all documented, actual out of pocket expenses incurred by them in connection with such Indemnified Person appearing or preparing to appear as such a witness and /or obtaining and producing documents, including without limitation in both instances, the fees and disbursements of legal counsel.

10. Entire Agreement; Amendments: This Agreement (including Schedule I) represent the entire agreement between the parties, supersede all previous agreements relating to the subject matter hereof (should they exist) and may not be modified or amended except in writing signed by all of the parties hereto.  This Agreement may be executed in counterparts (and by facsimile or other electronic means), each of which shall constitute an original and all of which together will be deemed to be one and the same document.  The invalidity or unenforceability of any provision of this Agreement (including Schedule I) shall not affect the validity or enforceability of any other provision.

11. Announcements: After the consummation of a Transaction, GLC may, at its option and expense, place customary announcements (including a customary "tombstone" advertisement) in such newspapers and periodicals as it may choose, or make similar announcements describing its services



**GLCA Securities, LLC**

for the Company in connection with any Transaction contemplated herein.  GLC shall be entitled to identify the Company and use the Company's name and logo in connection therewith.  In addition, if requested by GLC, the Company agrees that in any press release announcing any Transaction, the Company will include in such press release a mutually acceptable reference to GLC's role as financial advisor (or other role) to the Company with respect to such Transaction.

12. <u>Governing Law; Jury Trial Waiver; Jurisdiction</u>: THIS AGREEMENT WILL BE GOVERNED BY, AND CONSTRUED IN ACCORDANCE WITH, THE LAWS OF THE STATE OF NEW YORK APPLICABLE TO AGREEMENTS MADE AND TO BE PERFORMED ENTIRELY IN SUCH STATE.  EACH OF GLC AND THE COMPANY HEREBY KNOWINGLY, VOLUNTARILY AND IRREVOCABLY WAIVES ANY RIGHT TO TRIAL BY JURY IN ANY ACTION, PROCEEDING OR COUNTERCLAIM (WHETHER BASED UPON CONTRACT, TORT OR OTHERWISE) RELATED TO OR ARISING OUT OF OR IN CONNECTION WITH THE ENGAGEMENT OF GLC PURSUANT TO, OR THE PERFORMANCE BY GLC OF THE SERVICES CONTEMPLATED BY, THIS AGREEMENT.  REGARDLESS OF ANY PRESENT OR FUTURE DOMICILE OR PRINCIPAL PLACE OF BUSINESS OF THE PARTIES HERETO, EACH PARTY HEREBY IRREVOCABLY CONSENTS AND AGREES THAT ANY CLAIMS OR DISPUTES BETWEEN OR AMONG THE PARTIES HERETO ARISING OUT OF OR RELATED TO THIS AGREEMENT SHALL BE BROUGHT AND MAINTAINED IN ANY FEDERAL COURT OR STATE COURT OF COMPETENT JURISDICTION SITTING IN THE COUNTY OF NEW YORK IN THE STATE OF NEW YORK, WHICH COURTS SHALL HAVE EXCLUSIVE JURISDICTION OVER THE ADJUDICATION OF SUCH MATTERS; <u>PROVIDED</u>, <u>HOWEVER</u>, THE PARTIES AGREE THAT IN THE EVENT THE COMPANY FILES FOR BANKRUPTCY PROTECTION, THE APPLICABLE BANKRUPTCY COURT SHALL HAVE EXCLUSIVE JURISDICTION OVER THE ADJUDICTION OF SUCH MATTERS.  BY EXECUTION AND DELIVERY OF THIS AGREEMENT, EACH PARTY HERETO FURTHER IRREVOCABLY SUBMITS AND CONSENTS IN ADVANCE TO SUCH JURISDICTION IN ANY ACTION OR SUIT COMMENCED IN ANY SUCH COURT, AND HEREBY WAIVES IN ALL RESPECTS ANY CLAIM OR OBJECTION WHICH IT MAY HAVE BASED UPON LACK OF PERSONAL JURISDICTION, IMPROPER VENUE OR FORUM NON-CONVENIENS.  EACH PARTY HERETO AGREES THAT A FINAL NON-APPEALABLE JUDGMENT IN ANY SUCH ACTION BROUGHT IN ANY SUCH COURT SHALL BE CONCLUSIVE AND BINDING UPON IT AND MAY BE ENFORCED IN ANY OTHER COURTS HAVING JURISDICTION OVER IT BY SUIT UPON SUCH JUDGMENT.  EACH PARTY HERETO IRREVOCABLY CONSENTS TO SERVICE OF PROCESS IN ALL SUCH DISPUTES BY THE MAILING OF COPIES OF SUCH PROCESS TO THE NOTICE ADDRESS FOR EACH SUCH PERSON AS SET FORTH IN PARAGRAPH 12 HEREOF.  EACH OF THE PARTIES HERETO HEREBY CERTIFIES THAT NO REPRESENTATIVE OR AGENT OF ANY OTHER PARTY HERETO HAS REPRESENTED EXPRESSLY OR OTHERWISE THAT SUCH PARTY WOULD NOT SEEK TO ENFORCE THE PROVISIONS OF THIS WAIVER.  EACH OF THE PARTIES HERETO HEREBY ACKNOWLEDGES THAT IT HAS BEEN INDUCED TO ENTER INTO THIS AGREEMENT BY AND IN RELIANCE UPON, AMONG OTHER THINGS, THE PROVISIONS OF THIS PARAGRAPH 12.

13. <u>Notices</u>: Notice given pursuant to any of the provisions of this Agreement shall be in writing and shall be mailed or delivered: (i) if to the Company, at the address set forth on page one of this Agreement, and (ii) if to GLC, at the address set forth at the head of this Agreement, to the attention of Doug Lane and J. Soren Reynertson.

14. <u>Miscellaneous</u>:



**GLCA Securities, LLC**

(a) Nothing in this Agreement, express or implied, is intended to confer or does confer on any person or entity, other than the parties hereto, the Indemnified Persons (as such term is defined in <u>Schedule I</u>) and each of their respective successors, heirs and assigns, any rights or remedies under or by reason of this Agreement or as a result of the services to be rendered by GLC hereunder.

(b) The Company agrees that it will be solely responsible for ensuring that any Transaction complies with applicable law.

(c) Global Leveraged Capital Holdings, LLC (*"GLCH"*, the parent of GLC) and its subsidiaries and affiliates (the *"GLCH Group"*) are involved in a wide range of investment banking and other activities (including investment management, corporate finance, securities and loan trading, commercial banking and financial advisory services, principal investment, financial planning, benefits counseling, risk management, hedging, financing, brokerage activities, and other financial and non-financial activities and services for various persons and entities) from which conflicting interests, or duties, may arise. Information which is held elsewhere within GLCH or within the GLCH Group but is not publicly available will not for any purpose be taken into account in determining GLC's responsibilities to the Company under this engagement. Neither GLCH nor any other part of the GLCH Group will have any duty to disclose to the Company or any other party or utilize for the benefit of the Company or any other party any such information or the fact that the GLCH Group is in possession of such information, acquired in the course of providing services to any other person, engaging in any transaction (on its own account or otherwise) or otherwise carrying on its business. In addition, in the ordinary course of business, GLC and/or its affiliates may trade or effect transactions in the equity, debt, and other securities and financial instruments of the Company, any potential participant in a transaction, customers, or competitors of the Company, or persons who have other relationships with the Company for its own account and for the accounts of customers, and may at any time hold a long or short position in such securities. GLC and/or its affiliates may provide investment banking, commercial banking, underwriting, and financial advisory services to such other entities and persons unrelated to the Bankruptcy Cases. GLC recognizes its responsibility for compliance with federal securities laws in connection with such activities.

(d) No: (i) direct or indirect holder of any equity interests or securities of GLC whether such holder is a limited or general partner, member, stockholder or otherwise; (ii) affiliate of GLC; or (iii) director, officer, employee, representative, or agent of GLC, or of an affiliate of GLC or of any such direct or indirect holder of any equity interests or securities of GLC (collectively, the *"Party Affiliates"*) shall have any liability or obligation of any nature whatsoever in connection with or under this Agreement or the transactions contemplated hereby, and the Company waives and releases all claims against such Party Affiliates related to any such liability or obligation.

**GLC**
GLC Advisors & Co.
**GLCA Securities, LLC**

(e) To help the United States government fight the funding of terrorism and money laundering activities, the federal law of the United States requires all financial institutions to obtain, verify and record information that identifies each person with whom they do business as a condition to doing business with that person.  Accordingly, the Company will provide GLC upon request certain identifying information necessary to verify their respective identity, such as a government-issued identification number (e.g., a U.S. taxpayer identification number), certified articles of incorporation, a government-issued business license, partnership agreement or trust instrument.

(f) Each party hereto represents and warrants that it has all requisite power and authority to enter into this Agreement and to perform its obligations hereunder.  Each party hereto further represents and warrants that this Agreement has been duly and validly authorized by all necessary corporate action and has been duly executed and delivered by each such party and constitutes the legal, valid and binding agreement of each such party, enforceable in accordance with its terms.

(g) The terms of this Agreement have been negotiated by the parties hereto, who have each been represented by counsel, there shall be no presumption that any of the provisions of this Agreement shall be construed adverse to any party as "drafter" in the event of a contention of ambiguity in this Agreement, and the parties waive any statute or rule of law to such effect.

(h) This Agreement may not be assigned by any party hereto without the prior written consent of the other parties.  Any attempted assignment of this Agreement made without such consent shall be void and of no effect, at the option of the non-assigning parties.

(i) Headings used herein are for convenience of reference only and shall not affect the interpretation or construction of this Agreement.

(j) Upon any termination of this Agreement, Paragraphs 2 (excluding any obligations to pay Monthly Advisory Fees or Expenses incurred after termination, but including all amounts owed as of termination), 4-14 and Schedule I hereto shall survive such termination and shall remain in effect.

If the foregoing correctly sets forth our understanding, please indicate your acceptance thereof in the space provided below, whereupon this Agreement and your acceptance shall constitute a binding agreement between us.

*GLC Advisors & Co., LLC*

By:

Doug Lane
Managing Director

By:

J. Soren Reynertson
Managing Director

*GLCA Securities, LLC*

By:

Doug Lane
Managing Director

By:

J. Soren Reynertson
Managing Director

Accepted and agreed to as of the Effective Date:
**COMPANY:**

uBiome Inc., on behalf of itself and
its subsidiaries and controlled affiliates

By: _____
Name: Curtis G Solsvig III
Title: Chief Executive Officer



**Schedule I**

This <u>Schedule I</u> is a part of and is incorporated into that certain letter agreement (the "***Agreement***"), entered into as of July 12, 2019 between uBiome Inc.  (collectively, with its subsidiaries and controlled affiliates, the "***Company***") and GLC Advisors & Co., LLC and GLCA Securities, LLC (collectively, "***GLC***") attached herewith.  Capitalized terms not defined herein shall have the same meaning assigned in the Agreement.

As a material part of the consideration for the agreement of GLC to furnish its services under the Agreement, the Company, jointly and severally, agrees that it shall defend, indemnify and hold harmless GLC and its affiliates and their respective directors, officers, employees, attorneys and other agents appointed by any of the foregoing and each other person, if any, controlling GLC or any of its affiliates (GLC and each such person and entity being referred to as an "***Indemnified Person***"), from and against any losses, claims, damages, judgments, assessments, costs and other liabilities (collectively, "***Liabilities***"), and will reimburse each Indemnified Person for all fees and expenses (including the reasonable fees and expenses of counsel) (collectively, "***Expenses***") as they are incurred in investigating, preparing, pursuing or defending any claim, action, proceeding or investigation, whether or not in connection with pending or threatened litigation and whether or not any Indemnified Person is a party (collectively, "***Actions***"), in each case, arising out of, related to or in connection with advice or services rendered or to be rendered by an Indemnified Person pursuant to the Agreement, the transactions contemplated thereby or any Indemnified Persons' actions or inactions in connection with any such advice, services or transaction (the "***Services***"); <u>provided</u> that the Company will not be responsible for any Liabilities or Expenses of any Indemnified Person that are determined by a judgment of a court of competent jurisdiction, which judgment is no longer subject to appeal or further review, to have resulted primarily from such Indemnified Person's gross negligence or willful misconduct in connection with any of the advice, actions, inactions or Services referred to above other than an action or failure to act undertaken at the request or with the consent of the Company.  The Company shall also reimburse such Indemnified Person for all Expenses as they are incurred in connection with enforcing such Indemnified Persons' rights under the Agreement (including without limitation its rights under this <u>Schedule I</u>).  Such Indemnified Person shall reasonably cooperate with the defense of any Actions.

The Company shall, if requested by GLC, assume the defense of any such Action including the employment of counsel reasonably satisfactory to GLC.  The Company will not, without prior written consent of GLC (which shall not be unreasonably withheld), settle, compromise or consent to the entry of any judgment in or otherwise seek to terminate any pending or threatened Action in respect of which indemnification or contribution may be sought hereunder (whether or not any Indemnified Person is a party thereto) unless such settlement, compromise, consent or termination (i) includes an unconditional release of such Indemnified Person from all Liabilities arising out of such Action and (ii) does not include any admission or assumption of fault or culpability on the part of any Indemnified Person.



**GLCA Securities, LLC**

In the event that the foregoing indemnity is not available, for any reason, to an Indemnified Person in accordance with the Agreement, the Company shall contribute to the Liabilities and Expenses paid or payable by such Indemnified Person in such proportion as is appropriate to reflect:  (i) the relative benefits to the Company, on the one hand, and to GLC, on the other hand, of the matters contemplated by the Agreement; or (ii) if the allocation provided by the immediately preceding clause (i) is not permitted by applicable law, not only such relative benefits but also the relative fault of the Company, on the one hand, and GLC, on the other hand, in connection with the matters as to which such Liabilities or Expenses relate, as well as any other relevant equitable considerations.    Notwithstanding the foregoing, in no event shall any Indemnified Persons be required to contribute an aggregate amount in excess of the amount of fees actually received by GLC from the Company pursuant to the Agreement.  Relative benefits received by the Company, on the one hand, and GLC, on the other hand, shall be deemed to be in the same proportion as (x) the total value of the aggregate cash consideration, securities or any other property paid or received or contemplated to be paid or received by the Company, and its security holders, creditors or other affiliates, as the case may be, pursuant to the Transaction(s) or proposed Transaction(s) (whether or not consummated) contemplated by the engagement under the Agreement, bears to (y) the fees received or contemplated to be received by GLC under the Agreement.

No Indemnified Person shall have any liability (whether direct or indirect, in contract or tort or otherwise) to the Company for or in connection with advice or Services rendered or to be rendered by any Indemnified Person pursuant to the Agreement, the transactions contemplated thereby or any Indemnified Person's actions or inactions in connection with any such advice, Services or transactions except for Liabilities (and related Expenses) of the Company that are determined by a judgment of a court of competent jurisdiction, which judgment is no longer subject to appeal or further review, to have resulted solely from such Indemnified Person's gross negligence or willful misconduct in connection with any such advice, actions, inactions or Services, provided that, in no event shall any Indemnified Person be liable to the Company in an aggregate amount in excess of the amount of fees actually received by GLC pursuant to the Agreement.

Prior to entering into any agreement or arrangement with respect to, or effecting, any (i) merger, statutory exchange or other business combination or proposed sale, exchange, dividend or other distribution or liquidation of all or a significant portion of its assets, or (ii) significant recapitalization or reclassification of its outstanding securities that does not directly or indirectly provide for the assumption of the obligations of the Company set forth in this Agreement, the Company will notify GLC in writing thereof, if not previously so notified, and shall arrange in connection therewith alternative means of providing for the obligations of the Company set forth in this Agreement, including the assumption of such obligations by another party, insurance, surety bonds, the creation of an escrow, or other credit support arrangements, in each case in an amount and upon terms and conditions reasonably satisfactory to GLC.

These indemnification, contribution and other provisions of this Schedule I shall: (i) remain operative and in full force and effect regardless of any termination of the Agreement



or completion of the engagement by GLC; (ii) inure to the benefit of any successors, assigns, heirs or personal representative of any Indemnified Person; and (iii) be in addition to any other rights that any Indemnified Person may have.



**GLCA Securities, LLC**

### Schedule II

For the purposes hereof, the term "Aggregate Consideration" shall mean the total amount of all cash plus the total value (as determined pursuant hereto) of all securities, contractual arrangements (including, without limitation, any lease arrangements or put or call agreements) and other consideration, including, without limitation, any contingent or earned consideration, paid or payable, directly or indirectly, in connection with a Sale Transaction (including, without limitation, amounts paid (i) pursuant to covenants not to compete, employment contracts, employee benefit plans, management fees or other similar arrangements, and (ii) to holders of any warrants, stock purchase rights or convertible securities of the Company and to holders of any options or stock appreciation rights issued by the Company, whether or not vested). Aggregate Consideration shall also include the amount of any short-term liabilities (including, without limitation, any trade or ordinary course liabilities) and any long-term liabilities of the Company (including without limitation, the principal amount of any indebtedness for borrowed money and capitalized leases and the full amount of any off-balance sheet financings) (x) repaid, defeased or retired, directly or indirectly, in connection with or in anticipation of a Sale Transaction or (y) existing on the Company's balance sheet at the time of a Sale Transaction (if such Sale Transaction takes the form of a merger, consolidation or a sale of stock or partnership interests) or assumed in connection with a Sale Transaction (if such Sale Transaction takes the form of a sale of assets). For purposes of calculating the amount of revolving credit debt in the preceding sentence, the arithmetic mean of the amount of revolving credit debt outstanding on the last day of each month during the 12 months preceding the closing of the Sale Transaction will be used. In the event such Sale Transaction takes the form of a sale of assets, Aggregate Consideration shall include (i) the value of any current assets not purchased, minus (i) the value of any current liabilities not assumed. In the event such Sale Transaction takes the form of a spin-off, split-off or similar transaction, Aggregate Consideration shall include the fair market value of (i) the equity securities of the Company retained by the Company's security holders following such Sale Transaction and (ii) any securities received by the Company's security holders in exchange for or in respect of securities of the Company following such Sale Transaction (all securities received by such security holders being deemed to have been paid to such security holders in such Sale Transaction). The value of securities that are freely tradable in an established public market will be determined on the basis of the last market closing price prior to the consummation of a Sale Transaction. The value of securities that are not freely tradable or have no established public market, or if the consideration consists of property other than securities, the value of such property shall be the fair market value thereof as mutually determined in good faith by GLC and the Company, provided, however, that all debt securities shall be valued at their stated principal amount without applying a discount thereto. If the consideration to be paid is computed in any foreign currency, the value of such foreign currency shall, for purposes hereof, be converted into U.S. dollars at the prevailing exchange rate on the date or dates on which such consideration is payable. Aggregate Consideration shall also include (aa) the face amount of any liabilities tendered as purchase price in connection with any credit bid; and (bb) amounts paid into escrow at the time such escrow is established (without future adjustment); and (cc) in the case of compensation attributable to any part of the Aggregate Consideration which is contingent upon some future event (*e.g.*, the realization of earnings projections), amounts paid to the selling



**GLCA Securities, LLC**

party(ies) (at the time such amounts are paid). As used in this Agreement, the terms "payment," "paid" or "payable" shall be deemed to include, as applicable, the issuance or delivery of securities or other property other than cash.



If the foregoing correctly sets forth our understanding, please indicate your acceptance thereof in the space provided below, whereupon this Agreement and your acceptance shall constitute a binding agreement between us.

**GLC Advisors & Co., LLC**

By: _____
      Doug Lane
      Managing Director

By: _____
      J. Soren Reynertson
      Managing Director

**GLCA Securities, LLC**

By: _____
      Doug Lane
      Managing Director

By: _____
      J. Soren Reynertson
      Managing Director

Accepted and agreed to as of the Effective Date:

**COMPANY:**

uBiome Inc, on behalf of itself and
its subsidiaries and controlled affiliates

By: _____
Name: Curtis G Solsvig III
Title: Acting Chief Executive Officer

**GLC**
GLC Advisors & Co.
**GLCA Securities, LLC**