```
 1                    UNITED STATES BANKRUPTCY COURT
                          DISTRICT OF DELAWARE
 2

 3  IN RE:                            .  Chapter 11
                                      .  Case No.: 19-11938 (LSS)
 4  UBIOME, INC.,                     .
                                      .
 5               Debtor.              .
                                      .  Courtroom 2
 6                                    .  824 Market Street
                                      .  Wilmington, Delaware 19801
 7                                    .
                                      .  Wednesday, October 2, 2019
 8  . . . . . . . . . . . . . . . . .    11:02 A.M.

 9                       TRANSCRIPT OF HEARING
             BEFORE THE HONORABLE LAURIE SELBER SILVERSTEIN
10                  UNITED STATES BANKRUPTCY JUDGE

11  APPEARANCES:

12  For the Debtor:         Joseph M. Barry, Esquire
                            Joseph M. Mulvihill, Esquire
13                          YOUNG CONAWAY STARGATT & TAYLOR, LLP
                            Rodney Square
14                          1000 North King Street
                            Wilmington, Delaware 19801
15

16  For the U.S. Trustee:   Jane M. Leamy, Esquire
                            OFFICE OF THE UNITED STATES TRUSTEE
17                          844 King Street
                            Suite 2207, Lockbox 35
18                          Wilmington, Delaware 19801

19  (APPEARANCES CONTINUED)

20  ECRO:                   Electronically recorded
                            By:  Nicki Barksdale, ECRO
21
    Transcription Service:  Reliable
22                          1007 N. Orange Street
                            Wilmington, Delaware 19801
23                          Telephone: (302) 654-8080
                            E-Mail: gmatthews@reliable-co.com
24
    Proceedings recorded by electronic sound recording;
25  transcript produced by transcription service.
```

```
 1  APPEARANCES (CONTINUED):

 2  For the Official
    Committee of Unsecured
 3  Creditors:               Bradford J. Sandler, Esquire
                             PACHULSKI STANG ZIEHL & JONES, LLP
 4                           919 Market Street
                             17th Floor
 5                           Wilmington, Delaware 19801

 6  For 8VC:                 J. Eric Wise, Esquire
                             GIBSON, DUNN & CRUTCHER, LLP
 7                           200 Park Avenue
                             New York, New York 10166

 8

 9  APPEARING (TELEPHONICALLY):

10  For GLC:                 Robin L. Spigel, Esquire
                             BAKER BOTTS, LLP
11                           30 Rockefeller Plaza
                             New York, New York 10112
12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

Case 19-11938-LSS   Doc 145   Filed 10/08/19   Page 3 of 16

3

| | INDEX | |
|---|---|---|
| | MOTIONS: | PAGE |
| | Agenda Item 19: Debtor's Motion for Entry of an Order (I) Converting this Chapter 11 Case to a Case Under Chapter 7, (II) Establishing a Deadline for Filing Final Chapter 11 Fee Applications, and (III) Granting Related Relief [D.I. 127; 10/1/19] | 4 |
| | Agenda Item 17: Debtor's Application for an Order Authorizing the Retention and Employment of Sidley Austin LLP as Special Criminal Defense Counsel for Certain Investigative Matters, *Nunc Pro Tunc* to the Petition Date [D.I. 61; 9/11/19] | 10 |
| | Court's ruling | 11 |
| | Agenda Item 18: Debtor's Application for Entry of an Order (I) Authorizing the Retention and Employment of GLC Advisors & Co., LLC and GLCA Securities, LLC as Investment Banker for the Debtor and Debtor in Possession, Pursuant to 11 U.S.C. §§ 327(a) and 328, *Nunc Pro Tunc* to the Petition Date, (II) Waiving Certain Information Requirements Imposed by Local Rule 2016-2, and (III) Granting Related Relief [D.I. 62; 9/11/19] | 11 |
| | Court's ruling | 14 |
| | Transcriptionist's Certificate | 16 |

-o0o-

1       (Proceedings commenced at 10:06 a.m.)

2              THE COURT OFFICER:  Please rise.

3              THE COURT:  Please be seated.

4              MR. BARRY:  Good morning, Your Honor.  For the

5  record, Joseph Barry, on Young Conaway Stargatt & Taylor, on

6  behalf of the debtors.

7              Your Honor, this is our first regularly scheduled

8  omnibus hearing in the case and, as we flagged to chambers

9  yesterday, and as our amended agenda reflects, we've had an

10 unfortunate development in the case over the past 24 hours.

11             By way of context, Your Honor may recall that Your

12 Honor approved our interim financing in the amount of $3 and

13 a half million, following the first day hearing and

14 thereafter, the U.S. Trustee appointed a creditors'

15 committee.  From there, it was pretty standard fair.

16 Deadlines were extended.  We worked with the committee to try

17 to work out their issues on all of the motions.  We began to

18 roll out information.  The professional advisors had

19 extensive calls and contacts to try to get the committee up

20 to speed.

21             On this past Friday, the committee filed a fairly

22 exhaustive objection to the debtor's proposed debtor-in-

23 possession financing.  The parties attempted to work through

24 the weekend to try to bridge the issues raised by the

25 committee.  Those efforts were, unfortunately, not

1 successful.

2       This put the debtor, I think, in a very difficult
3 position, Your Honor.  First, we would have a very
4 contentious, probably multi-day DIP trial.  We were
5 contemplating three lives witnesses.  I know the committee
6 had a litigation team gearing up.  Young Conaway had a
7 litigation team gearing up.  Of course, the lenders were, you
8 know, involved and would participate.

9       So, we were looking at a fairly substantial,
10 contested hearing that would be very costly to the estate
11 that's on a fairly tight budget.  But, Your Honor, more than
12 cost would be the potential outcomes.  We're a little further
13 on in the sale process than we were at the interim hearing,
14 so the debtor and its board considered the potential outcomes
15 for a contested DIP hearing, which are as follows.

16       If the debtor were to prevail in their entirety in
17 getting the roll-up approved and overcoming all of the
18 committee's objections, we would win the day.  We think that
19 what would happen is we would continue to potentially fight
20 with the creditors' committee and that win would actually
21 give us an additional 12 days until we needed to come back
22 for the third trench of DIP funding, which Your Honor may
23 recall was discretionary on the part of the lenders and
24 contingent on the debtor being able to procure a letter of
25 intent that would pay off the DIP and for the rolled-up DIP

1 in full.

2 So, Your Honor, that put us in a position of
3 having to appear before you 12 days later, having convinced
4 Your Honor to overrule, in its entirety, the committee
5 objection, agree to the roll-up, and at that point, one of
6 those things would be happening.  Either, we wouldn't have an
7 LOI that would be paying off the DIP in full, in which case
8 we would be where we are today, which is converting the case
9 or, alternatively, we would have another probably hotly
10 contested further DIP trial in connection with the third
11 trench, a matter of which I think any of the parties had an
12 appetite for.

13 Alternatively, Your Honor, if we had this trial
14 today and the committee were to prevail on any aspect of
15 their objection, the debtors would essentially be in default
16 under the DIP and I can tell you that leading into the case,
17 the debtors and the two lenders engaged in very difficult
18 negotiations over the economic and legal terms, the
19 financing, and, you know, in the face of a successful
20 objection by the creditors' committee and virtually any
21 aspect, the parties were not willing to further concede the
22 economic points that they had already given in the interim
23 financing.

24 So, Your Honor, that puts the debtor in an
25 untenable position.  We consulted with the parties.  We --

1 the special committee of the debtor's Board of Directors met
2 and deliberated.  The full Board of the debtor's met and
3 deliberated and determined that given the circumstances and
4 given where we are in the sale process, that it was the in
5 best interests of the estate to convert the case.
6 　　　　　Your Honor, we'll pause there and see if Your
7 Honor has any questions before I talk about timing?
8 　　　　　THE COURT:  No, I don't have any questions.
9 　　　　　MR. BARRY:  With respect to timing, Your Honor, we
10 of course would defer to the Court in the area of due
11 process, but we've spoken with the U.S. Trustee, the lenders,
12 and the committee.  The debtors runs out of cash next week.
13 We understand and acknowledge that there's a holiday in the
14 middle of the week.
15 　　　　　We would propose filing a motion to shorten notice
16 today and would ask that the conversion motion be heard on
17 Thursday, which would give time for the debtor to tie up some
18 loose threads and the professionals for the committee to get
19 their retention applications on file.
20 　　　　　THE COURT:  Let me hear from others, with respect
21 to whatever you might want to say, plus the timing.
22 　　　　　MR. BARRY:  Your Honor, before I cede, I have just
23 one point.  Everybody worked hard to make this work.  There
24 was, as you could imagine, some contentious negotiations over
25 this and over the DIP, but think that the professionals

1 involved here have all known each other for a long time and I
2 think everybody pushed as hard as they could for your
3 clients, but did so, I think, in a respectful [sic] and in an
4 attempt to be collaborative.  So, we appreciate everybody's
5 efforts, despite the outcome.
6         THE COURT:  Thank you.
7         MR. WISE:  Your Honor, Eric Wise, for 8VC.
8         As the debtor has explained, we did engage in
9 negotiations.  We really worked hard to get to a place where
10 we could agree, but without wanting to reveal anything about
11 settlement discussions, we had a gap that we just couldn't
12 close and it related to some real features of the case where
13 I would say that each party could see where the other party
14 was coming from and understood that, and so were unable to,
15 you know, form a meeting of the minds on what was the right
16 approach for a final hearing and the next -- the approval of
17 the balance of the DIP.
18         If you have any questions?
19         THE COURT:  No, thank you.
20         MR. SANDLER:  Good morning, Your Honor.  Brad
21 Sandler, of Pachulski Stang Ziehl & Jones, on behalf of the
22 committee, in appears to be one of the shortest engagements
23 I've ever had.
24         Your Honor, I would echo the comments of Mr. Barry
25 and Mr. Wise in the sense that the parties, we all understood

1   each other's positions.  I think that from the viewpoint of
2   each party, they were acting, certainly, in their own best
3   interests.  Reasonable minds can certainly differ, as they
4   did here.
5              It's disappointing that this case is now going to
6   convert, but, obviously, each stakeholder had its own
7   economic position and the gap was just too big to bridge.
8              With that, Your Honor, again, we are disappointed.
9   We certainly understand, and the timing that Mr. Barry
10  suggested for the conversion motion is fine with the
11  committee.
12             THE COURT:  Okay.  Thank you.
13             Okay.  So, you're looking at the 10th?
14             MR. BARRY:  Yes, Your Honor.
15             And the committee has advised that they're not
16  going to contest the motion and the lenders, likewise, are
17  not.  I'm not sure if there's anybody else who would oppose
18  it.  So, I suspect we'll have an uncontested hearing.
19             THE COURT:  Okay.  I need to find out from
20  Mrs. Johnson what we have scheduled that morning.  That's my
21  Chapter 7 day.  So, I don't know what time I currently have
22  hearings scheduled at that point, but I'll ask her and before
23  we leave, we'll come up with a time.  It will be in the
24  morning, most likely --
25             MR. BARRY:  And, obviously, we'll accommodate Your

1  Honor's schedule.
2              THE COURT:  -- but it's going to be heard, okay.
3  There'll be a time, I just don't know what I have.
4              MR. BARRY:  And we'll get a motion to shorten so
5  the record is complete on that, after this hearing, Your
6  Honor.
7              THE COURT:  Okay.
8              MR. BARRY:  With that, Your Honor, we do have a
9  couple items, a couple of loose threads in the 11 to clean up
10 here today --
11             THE COURT:  Okay.
12             MR. BARRY:  -- two retentions.  I'll cede the
13 podium to my colleague, Mr. Mulvihill.
14             MR. MULVIHILL:  Good morning, Your Honor.  For the
15 record, Joseph Mulvihill of Young Conaway, counsel to the
16 debtors.
17             We do have two retention items that are still
18 outstanding, Your Honor; they are Agenda Items Numbers 17
19 and 18.  With respect to Agenda Item Number 17, that is the
20 retention application for Sidley Austin.  They are being
21 retained as special criminal defense counsel to the debtors,
22 and we filed a certification of counsel at Docket Number 125
23 on that.  We just noticed the order hadn't been entered.
24             Mr. Brian Stretch is on the phone, if you had any
25 questions, with respect to the application; otherwise, we

1 would request that the order, as revised, be entered.

2     THE COURT: No, I didn't have any questions.

3     I think there was -- if we were going forward, I

4 might have questions about how Sidley and -- is it Milbank?

5     MR. MULVIHILL: Yes, Your Honor.

6     THE COURT: Sidley and Milbank were going to

7 coordinate and the different functions they were going to

8 play. But I assume at this point, it's just a question of

9 ensuring that Sidley is retained so that it can file a fee

10 application?

11     MR. MULVIHILL: That's right, Your Honor.

12     THE COURT: Then, no. I will sign that. I've

13 reviewed it and I will sign that order.

14     MR. MULVIHILL: Thank you, Your Honor.

15     The next item on the agenda is Agenda Item

16 Number 18, which is GLC's retention application. They are an

17 investment banker of the debtor. We received informal

18 comments from the United States Trustee and the Official

19 Committee of Unsecured Creditors.

20     If I may approach with a blackline of the order?

21     THE COURT: Yes.

22     MR. MULVIHILL: Your Honor, in response to

23 comments raised by the United States Trustee in Paragraph 5,

24 we changed it to half-hour increments of time to be kept and

25 in Paragraph 10, the U.S. Trustee had asked for language

1  confirming the fiduciary duties, which we added.

2  　　　　　With respect to the committee's comments, there's
3  a defined term in the engagement letter of "aggregate
4  consideration."  The first document I handed you is in
5  Paragraph 11 is the revised language and the other document
6  behind that would be a blackline showing the changes from the
7  defined term in the engagement agreement.

8  　　　　　And with that, the comments from the committee
9  have been resolved and the comments from the U.S. Trustee
10 have been resolved, and we would request that the order be
11 entered, as revised.

12 　　　　　THE COURT:  Okay.  Let me ask this question, then,
13 because this case is on track for a conversion: Is there any
14 scenario in which GLC receives a fee because this case
15 converts?

16 　　　　　MR. MULVIHILL:  So, they will receive their
17 monthly fee --

18 　　　　　THE COURT:  Yes.

19 　　　　　MR. MULVIHILL:  -- but unless a transaction is
20 received in the next week or so, they would not receive any
21 additional fees on top of that.

22 　　　　　THE COURT:  Okay.  I ask that because I did have a
23 case in which the banker's fee was payable, basically, upon
24 any circumstance, including conversion or dismissal.  So, I
25 want to make sure that there's nothing in the definition of

1  restructuring transaction fee or sale transaction fee or
2  financing transaction fee that could possibly result in a fee
3  upon conversion.
4              MS. LEAMY:  Your Honor, Jane Leamy, for the U.S.
5  Trustee.  Maybe if we could take a short break and look in
6  the engagement letter, I know there is a tail period.  I
7  don't know if that will apply, but we should look at it since
8  Your Honor has raised the question.
9              THE COURT:  Yes, I would like people to look at
10 it.  I was a little surprised in that particular engagement
11 and did not approve it in that form, so I'd just like to
12 ensure that there's nothing here.  I certainly have no
13 problem with the banker receiving its monthly fee, as
14 required, if appropriate, under the terms of its engagement;
15 it is the "any-additional fee" that could be triggered.
16             MR. MULVIHILL:  Your Honor, may I propose --
17             MS. SPIGEL:  (Via telephone) Your Honor, this is
18 Robin Spigel, counsel for GLC.  I'm with Baker Botts.  Thank
19 you for letting me appear telephonically.
20             I'm okay with the short break so everyone can get
21 onboard, but there is nothing in the definition that would
22 allow them to have a fee upon dismissal or conversion.
23             THE COURT:  Thank you, Ms. Spigel.
24      (Pause)
25             MR. MULVIHILL:  Your Honor, I believe the U.S.

1   Trustee and Ms. Spigel and I will get on a call quickly.  I
2   think maybe it would make the sense for us to just submit an
3   order under certification of counsel after we've had the
4   conversation, letting you know that the United States Trustee
5   has signed off.  I think that makes the most sense.
6               THE COURT:  That's fine.
7               Okay.  In terms of a time for next Thursday,
8   Mrs. Johnson informs me that, actually, the afternoon is
9   better, and so, we'll schedule this at 3:30.  That's why I
10  don't do the scheduling.
11          (Laughter)
12              MR. MULVIHILL:  Your Honor, would you like us to
13  set an objection deadline for that or ...
14          (Pause)
15              THE COURT:  You can set objection deadline at noon
16  the day before.  I recognize that's Yom Kippur.  Anybody
17  who -- objections can also be filed sooner.
18              MR. MULVIHILL:  Thank you, Your Honor.
19              MR. BARRY:  Unless Your Honor has any questions, I
20  think that's all the business we have today, Your Honor.
21              Again, we appreciate everybody -- despite the
22  outcome -- working collaboratively to try to get to a deal,
23  but it just didn't work out in this one.
24              THE COURT:  Okay.  Thank you very much.
25              We're adjourned.

1        COUNSEL:  Thank you, Your Honor.
2    (Proceedings concluded at 10:23 a.m.)
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

1 <u>CERTIFICATION</u>

2 I certify that the foregoing is a correct
3 transcript from the electronic sound recording of the
4 proceedings in the above-entitled matter to the best of my
5 knowledge and ability.

6
7
8
9 <u>/s/ William J. Garling</u>     <u>October 6, 2019</u>
10 William J. Garling, CET**D-543
11 Certified Court Transcriptionist
12 For Reliable
13
14
15
16
17
18
19
20
21
22
23
24
25