ELISE S. FREJKA, CIPP/US
Frejka PLLC
420 Lexington Avenue – Suite 310
New York, New York 10170
Telephone: (212) 641-0800
Facsimile: (212) 641-0820

*Consumer Privacy Ombudsman*

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF DELAWARE

-------------------------------------------------------------X
                       :

In re:                           :    Chapter 7

                            :

UBIOME, INC.,              :    Case No. 19-11938 (LSS)

                            :

               Debtor.       :

                            :

-------------------------------------------------------------X

## REPORT OF THE CONSUMER PRIVACY OMBUDSMAN

Elise S. Frejka, CIPP/US, the consumer privacy ombudsman[1] (the "Ombudsman"), files

this report (the "Report")[2] in the above-captioned case to assist the Bankruptcy Court in its

consideration of the facts, circumstances, and conditions of the proposed sale (the "Sale") of

certain assets (the "Assets") of uBiome, Inc. (the "Debtor") to Psomagen, Inc. (the "Successful

Bidder"). This Report is intended to address any privacy concerns in connection with the Sale of

(i) a microbiome sample data base of nearly 300,000 samples, over 8,000 of which have

metadata (the "Database"), and (ii) customer accounts (the "Customer Accounts").[3]

---

[1] See Order Directing Appointment of Consumer Privacy Ombudsman [Dkt. No. 233]; Notice of Appointment of Consumer Privacy Ombudsman [Dkt. No. 242].

[2] The Ombudsman provided an earlier draft of the recommendations contained in Report to the chapter 7 trustee and counsel for the chapter 7 trustee prior to the auction. As a result of the auction and the scope of the Assets to be transferred, the recommendations have been modified to only address the issues before the Bankruptcy Court at this time.

[3] The Debtor's customer lists are an excluded asset and the sale is not contemplated by the Chapter 7 Trustee at this time. See Asset Purchase Agreement at § 2.2.3.

## RECOMMENDATIONS

After a review of the relevant facts and circumstances, and as more fully discussed in this

Report, the Consumer Privacy Ombudsman recommends that the Bankruptcy Court approve the

proposed Sale of Personally Identifiable Information,[4] including Protected Health Information,[5]

that was processed from customers of the Debtor, subject to the following recommendations:

- All metadata in the Database should be anonymized or deidentified with each consumer given a unique identifier that will not lead to the identification of the consumer. Specifically, all names, addresses, electronic addresses, phone numbers, credit card/banking information and other identifying characteristics should be removed prior to any transfer. Metadata that may be useful to the Successful Bidder such as geographical region or zip code, race, ethnicity and medical conditions may be transferred to preserve

---

[4] Personally Identifiable Information means information—

(A) if provided by an individual to the debtor in connection with obtaining a product or a service from the debtor primarily for personal, family, or household purposes—

(i) the first name (or initial) and last name of such individual, whether given at birth or time of adoption, or resulting from a lawful change of name;
(ii) the geographical address or a physical place of residence of such individual;
(iii) an electronic address (including an e-mail address) of such individual;
(iv) a telephone number dedicated to contacting such individual at such physical place of residence;
(v) a social security account number issued to such individual; or
(vi) the account number of a credit card issued to such individual; or

(B) if identified in connection with 1 or more of the items of information specified in subparagraph (A)—

(i) a birth date, the number of a certificate of birth or adoption, or a place of birth; or
(ii) any other information concerning an identified individual that, if disclosed, will result in contacting or identifying such individual physically or electronically.

11 U.S.C. § 101(41A)

[5] Protected Health Information is a subset of individually identifiable health information, each as defined under the Health Insurance Portability and Accountability Act of 1996 ("HIPAA") (Pub. L. 104-191) and are entitled to heightened privacy protections.

The privacy of a consumer's individually identifiable health information is regulated by HIPAA, the Health Information Technology for Economic and Clinical Health Act ("HITECH Act"), 45 C.F.R. § 164.504, and various regulations promulgated under those laws, including the Modifications to the HIPAA Privacy, Security, Enforcement, and Breach Notification Rules under the Health Information Technology for Economic and Clinical Health Act and the Genetic Information Nondiscrimination Act; Other Modifications to the HIPAA Rules (the "Omnibus Rule"), 78 Fed. Reg. 5566 (Jan. 25, 2013). The term Protected Health Information is defined in the Privacy Rule issued under HIPAA to mean any health information that identifies, or reasonably could be used to identify, an individual, and that relates to physical or mental health or condition of the individual, the provision of health care to the individual, or the payment for the provision of health care to the individual, in each case if maintained or transmitted by a healthcare provider or other "Covered Entity," other than certain limited exceptions. 45 C.F.R. § 160.103.

the integrity of the Database but only if stripped of Personally Identifiable Information.

- Unless a consumer has affirmatively consented to the sale or transfer to the Successful Bidder of Personally Identifiable Information or the Debtor was a "Covered Entity" subject to HIPAA, the Chapter 7 Trustee should not be permitted to transfer Customer Accounts. If both the Debtor and the Successful Bidder are deemed to be a "Covered Entity" under HIPAA, the transfer of Customer Accounts is permitted by operation of law. Otherwise, if the Successful Bidder intends to continue to offer for sale the "Explorer," "SmartGut," and "SmartJane" products or similar competing products, the Successful Bidder may engage a third party acceptable to the Chapter 7 Trustee to solicit by email such consumer consent to the transfer on an opt-in[6] basis and if such consumer consent is obtained, the specific Customer Account may be transferred to the Successful Bidder. Any solicitation period should be concluded within forty-five (45) days of the entry of any order approving the Sale. Otherwise, all Customer Accounts not subject to a litigation hold should be closed and deleted by the Chapter 7 Trustee in a manner consistent with industry standard data security protections and applicable information security laws and best practices within ninety (90) days of the closing of any Sale (the "Closing").

- If the Successful Bidder acquires any Personally Identifiable Information as part of the Sale, the Successful Bidder should agree to (i) become the successor-in-interest under the Debtor's privacy policy that was in effect on the Petition Date or on terms that are at least as protective of consumer privacy; (ii) adhere to all material terms of the Privacy Policy; and (iii) be liable for any violation of the Privacy Policy after the closing of the Sale.

- Except for Customer Accounts that may be subject to litigation holds, which information should be retained by the Chapter 7 Trustee, through the conclusion of such litigation and thereafter destroyed, the Chapter 7 Trustee should (i) destroy or cause to be destroyed within sixty (60) days of the Closing, in a manner consistent with industry standard data security protections and applicable information security laws and best practices, all Personally Identifiable Information that is transferred to the Successful Bidder, and (ii) file a Certificate of Destruction with the Bankruptcy Court confirming such destruction.

- If the Successful Bidder acquires any Personally Identifiable Information as part of the Sale, the Successful Bidder should agree that prior to making any material change to the Privacy Policy, including any changes to the use or disclosure of Personally Identifiable Information or Protected Health Information, the Successful Bidder will, to the extent required by applicable law: (i) provide consumers with notice of the proposed change; (ii) direct consumers to the Successful Bidder's privacy policy; and (iii) provide each consumer with the opportunity to opt-out to the proposed change to the privacy policy with any such modifications only being binding on those consumers who do not opt-out.

- If the Successful Bidder acquires any Personally Identifiable Information as part of the Sale, the Successful Bidder should agree to safeguard all Personally Identifiable

---

[6] "Opt-in" consent requires affirmative steps by a consumer to allow the collection and/or use of information; "opt-out" consent requires affirmative steps by a consumer to prevent the collection and/or use of information.

Information in a manner consistent with industry standard data security protections and applicable information security laws and best practices.

- If the Successful Bidder acquires any Personally Identifiable Information as part of the Sale, the Successful Bidder should agree to destroy all Personally Identifiable Information for which it determines it has no reasonable business need.

- If the Successful Bidder acquires any Personally Identifiable Information as part of the Sale, the Successful Bidder should agree to file a notice with the Bankruptcy Court within ninety (90) days after the Closing, (i) stating that it is in compliance with the foregoing provisions, and (ii) certifying that it will comply with any ongoing obligations in accordance with these provisions.

The Ombudsman believes these recommendations adequately address the transfer of Personally Identifiable Information in a manner that protects consumers' Personally Identifiable Information while facilitating the Sale for the benefit of the Debtor's estate. Moreover, the proposed limitations and notification procedures give effect to the Debtor's privacy policy, align with consumer expectations, and are consistent with best practices.

## BACKGROUND

1.      On September 4, 2019 (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court"), thereby commencing this case (the "Case").

2.      On September 11, 2019, the Debtor filed a motion to establish bid procedures and to conduct a sale process [Dkt. No. 56]. On September 30, 2019, the Debtor filed a revised bid procedures order under certification of counsel [Dkt. No. 123] but that order was never entered due to the pending motion to convert the Case to a case under chapter 7 of the Bankruptcy Code.

3.      On October 11, 2019, the Bankruptcy Court entered an order converting this Case to a case under chapter 7 [Dkt. No. 162], and Alfred T. Giuliano was appointed as the chapter 7 trustee (the "Chapter 7 Trustee") [Dkt. No. 163].

4.      On November 12, 2019, the Chapter 7 Trustee filed the *Motion of Alfred T. Giuliano, Chapter 7 Trustee, for Entry of: (A) an Order (I) Approving Bid Procedures in Connection with the Sale of the Debtor's Assets, (II) Scheduling an Auction for and Hearing to Approve Sale, (III) Approving Notice of Auction and Sale Hearing, (IV) Approving Procedures for the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, (V) Approving Form and Manner of Notice Thereof, and (VI) Granting Related Relief; and (B) an Order Authorizing and Approving (I) the Sale of the Debtor's Assets Free and Clear of Liens, Claims, Rights, Encumbrances, and Other Interests, (II) Assumption and Assignment of Certain Executory Contracts and Unexpired Leases and (III) Related Relief* ) (the "Sale Motion") [Dkt. No. 198].

5.      The Bankruptcy Court entered the *Order (I) Approving Bid Procedures in Connection with the Sale of the Debtor's Assets, (II) Scheduling an Auction for and Hearing to Approve Sale, (III) Approving Notice of Auction and Sale Hearing, (IV) Approving Procedures for the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, (V) Approving Form and Manner of Notice Thereof, and (VI) Granting Related Relief* on November 21, 2019 (the "Bid Procedures Order") [Dkt. No. 212].

6.      The Chapter 7 Trustee filed the *Notice of Extended Sale Deadlines and New Auction Date* [Dkt. No. 241] on December 9, 2019.

7.      On December 15, 2019, the Chapter 7 Trustee filed the *Notice of Selection of Stalking Horse and Filing of Related Asset Purchase Agreement* [Dkt. No. 247] and attached the Asset Purchase Agreement between the Successful Bidder and the Chapter 7 Trustee dated December 13, 2019 (the "Asset Purchase Agreement").

8.      The Chapter 7 Trustee conducted an auction on December 16, 2019 and selected the Successful Bidder as the highest and best bidder for the Debtor's Assets.

9.      The Successful Bidder will acquire, as relevant to this Report, the Database on an aggregated and anonymous basis in a manner that is consistent with the Ombudsman's recommendations.  See Asset Purchase Agreement at §§ 2.1.4.  ("all anonymous data, compilations of anonymous data and other results and all related Intellectual Property resulting from the Explorer, Explorer Plus, Smart Gut, and Smart Jane and any other diagnostic kits, sold, developed or controlled by the Debtor other than data that is prohibited from transfer and/or disclosure pursuant to applicable law, including HIPAA.")

10.     The Successful Bidder will also acquire the Debtor's "Records" which is defined in the Asset Purchase Agreement "… as either original or copies of the assignments, books, records, information, ledgers, files, invoices, documents, work papers, correspondence, plans (whether written, electronic or in any other medium), drawings, designs, specifications, creative materials, advertising and promotional materials, marketing plans, studies, reports, data and similar materials related to the Acquired Assets *and specifically excluding files and papers (i) not otherwise relating to the Acquired Assets and (ii) the disclosure of which would violate applicable law, including HIPAA."* See Asset Purchase Agreement at § 1.1.53 (emphasis added). To the extent the Records include the Customer Accounts it is the Ombudsman's recommendation that affirmative opt-in consent be obtained prior to any such transfer.

11.     The Bankruptcy Court will consider the Sale at a hearing on December 19, 2019.

## REVIEW OF THE DEBTOR'S PRIVACY POLICY AND PRACTICES

12.     In performing her duties, the Ombudsman has relied upon and reviewed, among

other things, the following:

      a.     The Debtor's (i) privacy policy in effect on the Petition Date; (ii) the
               Debtor's prior privacy policy; (iii) the Terms of Service; and (iv) template
               Research Consent (all available at www.waybackmachine.com);

      b.     Telephone interviews, discussions, and emails with (i) the Trustee; (ii)
               counsel for the Trustee; and (iii) a former employee of the Debtor familiar
               with the Debtor's privacy policy and data collection;

      c.     The Sale Motion, the Bidding Procedures Order, and the Asset Purchase
               Agreement;

      d.     The Debtor's privacy practices and collection procedures concerning
               Personally Identifiable Information, including the Debtor's database
               maintenance procedures for Personally Identifiable Information, and the
               Debtor's procedures for the sharing and use of such information;

      e.     Research and review of case law, commentaries, and court orders from
               bankruptcy cases involving the sale of Personally Identifiable Information
               and Protected Health Information;

      f.     Public filings by the Debtor; and

      g.     Applicable United States federal and state privacy laws, regulations,
               enforcement actions, guidance and industry best practices.

## INFORMATION COLLECTED AND THE DEBTOR'S PRIVACY POLICY

13.     The facts in this Report are based solely upon the Ombudsman's information and

belief, based upon her discussions with the Chapter 7 Trustee and his counsel, and historical

information in the public domain.

14.     The Debtor, using advanced DNA sequencing and utilizing the world's largest

microbiome database, offered a variety of products to patients and consumers to analyze the

DNA of their microbiomes, including "Explorer," "SmartGut," and "SmartJane". A more

complete history of the Debtor's business is set forth in the *Declaration of Curtis G. Solsvig III*

*in Support of the Debtor's Chapter 11 Petition and Requests for First Day Relief* [Dkt. No. 2].

15.    The Debtor's privacy policy (the "Privacy Policy") previously available at www.ubiome.com was last revised on May 23, 2018 and governs the Debtor's collection, storage, use and disclosure of consumer's personal information.  The Privacy Policy does not contain a provision regarding the sale or transfer of Personally Identifiable Information but does explain that Personally Identifiable Information is shared with:

- **Service providers**

  - We work with third party vendors, consultants and other providers that perform services on our behalf, which may include backup, storage, infrastructure, payment processing, identifying and serving targeted content, or analytics services.

- **Research affiliates**

  - If you have given consent for your information to be used in research as described in the Research Consent document,[7] we may share your information for research, such as for the purpose of publication in a peer-reviewed scientific journal.

- **Compliance with enforcement requests and applicable laws; Enforcement of our rights**

  - We may share information as required to satisfy any applicable law, regulation, court order, legal process or other governmental request, to enforce our Terms of Service (including the investigation of potential violations thereof), or to investigate and defend ourselves against any third party claims or allegations.

- **Links to third party websites**

  - Our Service may contain links to and from third party websites of our business partners.  If you follow a link to any of these websites, please note that these websites have their own privacy policies and that we do not accept any responsibility or liability for these policies. Please check the individual policies before you submit any information to those websites.

---

[7] The Research Consent promises consumers that only pooled data striped of identifying information is shared with third parties and that explicit authorization is required prior to the Debtor's release of individual level data to a third party.

- **Aggregated data**
  - ○  We may share information in an aggregated and anonymous form that does not identify you directly as an individual.

See Privacy Policy attached here as Exhibit A.

16.      Based upon the foregoing, it is clear that Debtor did not provide consumers with notice that their Personally Identifiable Information could be sold to a third party or shared on an individual level basis.  Moreover, it is unclear if the Debtor was a "Covered Entity" subject to HIPAA with respect to Protected Health Information that was collected[8] and given the sensitive nature of the information collected from consumers, more stringent scrutiny is appropriate prior to approving any sale of Personally Identifiable Information.

**ANALYSIS**

17.      Section 363(b)(1) of the Bankruptcy Code governs a debtor's ability to "use, sell, or lease" Personally Identifiable Information.  Generally, a debtor may not sell or lease Personally Identifiable Information if, at the time of the commencement of a bankruptcy case, the debtor's privacy policy prohibits the transfer of Personally Identifiable Information to unaffiliated entities.[9]  Notwithstanding this general prohibition, a sale is permitted, pursuant to section 363(b)(1)(B) of the Bankruptcy Code, if:

> after the appointment of a consumer privacy ombudsman, the court approves the sale (i) giving consideration to the facts, circumstances, and conditions of the sale and (ii) finding that no showing was made that the sale would violate applicable nonbankruptcy law.[10]

---

[8]  See Debtor's Motion for Entry of an Order Authorizing Certain Procedures to Maintain the Confidentiality of Patient Information as Required by Applicable Privacy Rules [Dkt. No. 11] ("Because the Debtor may qualify as a health care provider which transmits health information electronically, it may quality as a 'covered entity' subject to HIPAA.")

[9]  See 11 U.S.C. § 363(b)(1).

[10]  See 11 U.S.C. § 363(b)(1)(B).

9

18.     Here, the Privacy Policy is silent on the Debtors' ability to sell or transfer Personally Identifiable Information to a third party and the Trustee does not have adequate information to assist the Ombudsman in determining what consumer consent was given at the time of collection.  In light of the sensitive and personal nature of the individual level information provided by consumers to the Debtor at the time of collection, the Ombudsman recommends that to the extent the Successful Bidder intends to acquire the Customer Accounts, it is appropriate to obtain affirmative opt-in consent prior to such transfer in the manner set forth in this Report.  The solicitation of consumer consent may limit the number of Customer Accounts transferred but it will ensure that the individual level information is transferred with the express consent of the consumer.  Obtaining such consent is consistent with the Debtor's Privacy Policy.

19.     No consumer consent must be obtained, or notice given with respect to the sale of the Database.  The Asset Purchase Agreement makes clear that the Database will be transferred to the Successful Bidder stripped of all metadata and other Personally Identifiable Information.  As such, the Database contains no Personally Identifiable Information and can be transferred without limitation.

## CONCLUSION

20.    In summary, the Ombudsman believes that the recommendations in this Report, if adopted and incorporated into the Sale, strike an appropriate balance between the privacy rights of consumers and practical considerations associated with the sale of Personally Identifiable Information.  To the extent the defined term Records (as defined in the Asset Purchase Agreement at Section 1.1.53) includes Customer Accounts that are not anonymized, then the "opt-in" procedure described in this Report should be followed; to the extent the term Records does not include the Customer Accounts or the term Records does include Customer Accounts that will be anonymized, the Sale as proposed does not violate the Privacy Policy, and the Ombudsman has no objection to the Sale.

21.    The Ombudsman will be available at the Sale Hearing to address any questions or concerns from the Bankruptcy Court.

Dated: New York, New York
　　　　December 17, 2019

　　　　　　　　ELISE S. FREJKA, CIPP/US

　　　　　　　　420 Lexington Avenue – Suite 310
　　　　　　　　New York, New York 10170
　　　　　　　　Phone: 212-641-0800
　　　　　　　　Facsimile: 212-640-0820
　　　　　　　　Email: efrejka@frejka.com

　　　　　　　　*Consumer Privacy Ombudsman*

<u>EXHIBIT A</u>

uBiome, Inc.
PRIVACY POLICY

uBiome, Inc. ("uBiome," "we" or "us") is committed to protecting your privacy. This Privacy Policy explains how information about you or associated with you is collected, used and shared by uBiome.

This Privacy Policy applies to our websites, microbiome analysis services and other services and applications we may provide (collectively, our "Service").

By accessing or using our service, you signify that you have read, understood and agree to our collection, storage, use and disclosure of your personal information as described in this Privacy Policy. If you do not agree with this policy, do not access or use our Service or interact with any other aspect of our business.

Table of Contents
- INFORMATION WE COLLECT
- HOW WE USE INFORMATION WE COLLECT
- HOW WE SHARE INFORMATION WE COLLECT
- STORAGE AND SECURITY OF INFORMATION
- YOUR CHOICES REGARDING YOUR INFORMATION
- UPDATES TO OUR PRIVACY POLICY
- CONTACTING US
- LAST REVISION DATE

**INFORMATION WE COLLECT**

We collect information about you when you provide it to us, when you use our Service, and when other sources provide it to us, as described below.

- **Information you provide**
  - We may collect information you enter in our Service or provide to us in some other manner, including your name, email address, password, physical address, and billing information.
  - We may collect any communications between you and us, as well as any additional information you provide.

- **Information we collect automatically when you use our Service**
  - Cookies and Other Tracking Technologies
    - We automatically collect certain types of usage information when you visit our website or use our Service. When you visit our website, we may send

one or more cookies - a small text file containing a string of alphanumeric characters - to your computer that uniquely identifies your browser.

- A cookie may convey information to us about how you use our Service (for example, the pages you view, the links you click, how frequently you access our Service, and other actions you take on our Service), and allow us to track your usage of our Service over time.

- We may employ clear gifs (also known as web beacons) which are used to anonymously track the online usage patterns of our users. In addition, we may also use clear gifs in HTML-based emails sent to our users to track which emails are opened and which links are clicked by recipients. The information allows for more accurate reporting and improvement of our Service.

- Device and Connection Information
  - We may collect log file information from your browser or mobile device each time you access our Service. Log file information may include Internet Protocol ("IP") address, browser type, information about your mobile device, referring / exit pages and URLs, number of clicks and how you interact with links on our Service, domain names, landing pages, pages viewed.

  - When you access our Service by or through a mobile device, we may collect and store unique identification numbers associated with your device or our mobile application, mobile carrier, device type, model and manufacturer, mobile device operating system brand and model, and phone number.

- **Information collected through the use of our Service**
  - Information you provide through the use of our Service such as self-reported information and microbiome data.

- **Information we receive from third parties**
  - We may receive information about you and your activities on and off our Service from public sources and third-party partners, such as advertising and market research partners who provide us with information about your interest in, and engagement with, our Service and online advertisements.

**HOW WE USE INFORMATION WE COLLECT**

- **To provide our Service**
  - We use information about you to provide our Service to you, including to process transactions with you, authenticate you when you log in, provide customer support, and to monitor, operate and maintain our Service.

- **To communicate with you**
  - We may send you Service-related emails or messages that may contain personal information (for example account verification, change or updates to features, technical and security notices).
  - Please be aware that communications via email over the internet are not encrypted. Although unlikely, there is a possibility that information in an email can be intercepted and read by other parties besides the person to whom it is addressed. If you have concerns about the use of email, you may contact us as provided in the Contacting Us section to request assistance.

- **To market, promote, and drive engagement with our Service**
  - We may use your information to help us measure traffic and usage trends for our Service, to understand more about the demographics of our users, and to provide custom, personalized content and information, including targeted content and advertising for other uBiome products.

- **For research and development**
  - If you have given consent for your information to be used in research as described in the Research Consent document, we may use your Information for research purposes to improve our Service.

## HOW WE SHARE INFORMATION WE COLLECT

We share information about you with third parties that help us operate, provide, improve, integrate, customize, support, and market our Service.

- **Service providers**
  - We work with third party vendors, consultants and other providers that perform services on our behalf, which may include backup, storage, infrastructure, payment processing, identifying and serving targeted content, or analytics services.

- **Research affiliates**
  - If you have given consent for your information to be used in research as described in the Research Consent document, we may share your information for research, such as for the purpose of publication in a peer-reviewed scientific journal.

- **Compliance with enforcement requests and applicable laws; Enforcement of our rights**
  - We may share information as required to satisfy any applicable law, regulation, court order, legal process or other government request, to enforce our Terms of Service (including the investigation of potential violations thereof), or to investigate and defend ourselves against any third party claims or allegations.

- **Links to third party websites**
  - Our Service may contain links to and from third party websites of our business partners. If you follow a link to any of these websites, please note that these websites have their own privacy policies and that we do not accept any responsibility or liability for their policies. Please check the individual policies before you submit any information to those websites.

- **Aggregated data**
  - We may share information in an aggregated and anonymous form that does not identify you directly as an individual.

## STORAGE AND SECURITY OF INFORMATION

- **Storage and international transfers of your information**
  - Your information collected through the Service may be stored and processed in the United States or another country in which uBiome, our affiliates, or service providers maintain facilities.

  - We may transfer information to a country and jurisdiction that does not have the same data protection laws as your jurisdiction, and you consent to the transfer of your information to the U.S. or any other country in which uBiome, our affiliates, or service providers maintain facilities and the use of your information as described in this Privacy Policy.

- **Security of your information**
  - We take reasonable physical, administrative, and technological safeguards to preserve the integrity and security of your information. However, no security system is impenetrable and we cannot guarantee that your information is completely safe from intrusion.

  - In the event that any information under our control is compromised as a result of a breach of security, we will take reasonable steps to investigate the situation and where appropriate, notify those individuals whose information may have

been compromised and take other steps in accordance with any applicable laws and regulations.

- **How long we keep your information**
  - We will retain your information for as long as your account is active or as needed to provide you our Service. We also retain some of your information as necessary to comply with our legal obligations, to resolve disputes, to enforce our agreements, to support business operations and to continue to develop and improve our Service.

  - Where we retain information for improvement and development of our Service, we take steps to eliminate information that directly identifies you as an individual.

  - We retain information about your marketing preferences unless you specifically ask us to delete such information. We retain information derived from cookies and other tracking technologies for a reasonable period of time from the date such information was created.

- **Persons under the age of 13**
  - Our Service and its content are not directed at children under the age of 13. In the event that we learn that we have collected information from a child under age 13 without parental consent, we will take steps to delete such information.

  - If you believe that we might have any information collected from a child under 13, please contact us as provided in the Contacting Us section.


**YOUR CHOICES REGARDING YOUR INFORMATION**

You have certain choices available to you when it comes to your information, as stated below. You may contact us as provided in the Contacting Us section to request assistance.

- **Access and update your information**
  - You may access and update to your information. For example, you can access your profile information from your account and modify content using the editing tools associated with that content.

- **Delete your information**
  - You may request that we delete or anonymize certain information about you. Please note, however, that we may need to retain certain information for record keeping purposes, to complete transactions or to comply with our legal obligations.

- **Request that we stop using your information**
  - You may ask us to stop accessing, storing, using and otherwise processing your information where you believe we don't have the appropriate rights to do so. For example, if you believe a Services account was created for you without your permission or you are no longer an active user, you can request that we delete your account as provided in this policy.

  - Where you gave us consent to use your information for a limited purpose, you may withdraw that consent, but this will not affect any processing that has already taken place at the time. You can also opt-out of our use of your information for marketing purposes.

- **Opt out of communications**
  - You may opt out of receiving promotional communications from us and to have your contact information removed from our promotional email list or database.

- **"Do Not Track" Signals**
  - Some browsers have "Do Not Track" (DNT) features that can send a signal to the websites you visit indicating you do not wish to be tracked. Because there is not yet a common understanding of how to interpret the DNT signal, our Service do not currently respond to browser DNT signals.

- **Copy of your information**
  - Upon your request, we will provide you or a third party that you designate with an file of your basic account information in a structured, electronic format.

Your request and choices may be limited in certain cases: for example, if fulfilling your request would reveal information about another person, or if you ask to delete information which we are permitted by law or have compelling legitimate interests to keep.

Where you have asked us to share data with third parties, for example, you will need to contact those third-party service providers directly to have your information deleted or otherwise restricted.

If you have unresolved concerns, you may have the right to complain to a data protection authority in the country where you live, where you work or where you feel your rights were infringed.

For uses and disclosures of Protected Health Information ("PHI") please consult our Notification of Privacy Practices.


**UPDATES TO OUR PRIVACY POLICY**

We may modify this Privacy Policy from time to time. If we make any changes to this Policy, we will change the "Last Revision" date below and will post the updated Privacy Policy on this page.

If you object to any changes to this Policy, you may close your account. Continuing to use our Service after we publish changes to this Privacy Policy means that you are consenting to the changes.

**CONTACTING US**

If you have questions about this Privacy Policy, please contact us at privacyofficer@ubiome.com
or by writing to us at:

uBiome, Inc.
Attn: Privacy Officer
180 Steuart Street, San Francisco, CA 94105

When contacting us, please include sufficient information for us to identify all of your records, such as your name, address, and a telephone number where we can contact you. uBiome will consider your request and provide you a response within a reasonable timeframe.

**LAST REVISION DATE**

This Privacy Policy was last revised on May 23, 2018, and is effective as of May 25, 2018.