**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>UBIOME, INC.,[1]<br><br>  Debtor. | Chapter 7<br><br>Case No. 19-11938 (LSS)<br><br>**Re: Docket Nos. 198, 212** |

**DECLARATION OF ALFRED T. GIULIANO, CHAPTER 7 TRUSTEE, IN SUPPORT
OF SALE OF DEBTOR'S ASSETS PURSUANT TO SALE MOTION**

I, ALFRED T. GIULIANO, hereby declare that the following is true and correct to the best of my knowledge, information and belief:

1. I am the appointed chapter 7 trustee (the "Trustee") to the estate of the above-captioned debtor (the "Debtor").

2. I submit this declaration (this "Declaration") in support of the *Motion of Alfred T. Giuliano, Chapter 7 Trustee, for Entry of: (A) an Order (I) Approving Bid Procedures in Connection with the Sale of the Debtor's Assets, (II) Scheduling an Auction for an Hearing to Approve Sale, (III) Approving Notice of Auction and Sale Hearing, (IV) Approving Procedures for the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, (V) Approving Form and Manner of Notice Thereof, and (VI) Granting Related Relief; and (B) an Order Authorizing and Approving (I) the Sale of the Debtor's Assets Free and Clear of Liens, Claims, Rights, Encumbrances, and Other Interests, (II) Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, and (III) Related Relief* (the "Motion") [Docket No.

---

[1] The Debtor and the last four digits of its taxpayer identification number is: uBiome, Inc. (0019). The headquarters for the above-captioned Debtor is located at 360 Langton Street, Suite 301, San Francisco, CA 94103.

198] and in particular with respect to the sale of the Patent Portfolio and Equipment Assets, as defined below and as further detailed below.[2]

3. All facts set forth in this Declaration are based on my personal knowledge, my review of relevant documents and other information prepared or collected by advisors, representatives, or counsel to the Debtor's estate at my direction, or my opinion based on my experience with the Debtor's books and records. If I were called upon to testify, I could and would testify competently to the facts set forth herein, and I am authorized to submit this Declaration on behalf of the Debtor's estate.

*Sale Process*

4. Pursuant to the Motion, after a hearing on November 20, 2019, the Court entered the *Order (I) Approving Bid Procedures In Connection with the Sale of the Debtor's Assets, (II) Scheduling an Auction for and Hearing to Approve Sale, (III) Approving Notice Of Auction And Sale Hearing, (IV) Approving Procedures For the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, (V) Approving Form and Manner of Notice Thereof, and (VI) Granting Related Relief* (the "Bid Procedures Order") [Docket No. 212] approving the Bid Procedures attached thereto.

5. On November 22, 2019, the *Notice of Sale, Bid Procedures, Auction, and Sale Hearing* (the "Notice of Auction and Sale Hearing") [Docket No. 216] was filed providing a Bid Deadline of December 6, 2019 at 5:00 p.m. (Eastern time) and scheduled an Auction to occur on December 12, 2019 at 10:00 a.m. (Eastern time). The Notice of Auction and Sale Hearing was also served on applicable notice parties, interested bidders, and parties in interest. *See* Docket No. 217.

---

[2] Capitalized terms not otherwise defined herein shall have the meaning given to them in the Motion or Bid Procedures Order.

6. On November 22, 2019, the *Amended Notice of Possible Assumption and Assignment of Certain Executory Contracts and Unexpired Leases in Connection with Sale* (the "Amended Assumption Notice") [Docket No. 215] was filed and served[3] on applicable contract or lease counterparties providing notice of the sale and applicable deadlines to object.

7. On December 9, 2019, the *Notice of Extended Sale Deadlines and New Auction Date* (the "Notice of Extended Deadlines") [Docket No. 241] was filed and served[4] on applicable parties providing notice that the Trustee was extending the Bid Deadline to December 13, 2019 at 10:00 a.m. (Eastern time), a rescheduled Auction date of December 16, 2019 at 10:00 a.m. (Eastern time), and an extended sale objection deadline of December 18, 2019 at 12:00 noon (Eastern time).

8. Shortly after my appointment as Trustee on October 11, 2019 following conversion of this case from chapter 11 to chapter 7, I began marketing the sale of the Debtor's Assets to potential bidders and have continued to do so since entry of the Bid Procedures Order. I have been extensively involved in all aspects of the sale and marketing process, along with my accountants and financial advisors at Giuliano, Miller & Company, LLC ("GMCO") and bankruptcy counsel at Pachulski Stang Ziehl & Jones LLP ("PSZJ").

9. During the sale and marketing process, my advisors at GMCO and I have been in contact with approximately 45 potential bidders. Of those 45 bidders, the Trustee received, prior to the extended Bid Deadline, 14 Qualified Bids for various Assets of the Debtor.

10. On December 15, 2019, the *Notice of Selection of Stalking Horse and Filing of Related Asset Purchase Agreement* [Docket No. 247] (the "Stalking Horse Notice") was

---

[3] *See* Docket No. 217 (Certificate of Service).
[4] See Docket No. 243 (Certificate of Service).

3

filed identifying the selection of Psomagen, Inc. ("Psomagen") as the Stalking Horse Bidder for the Debtor's intellectual property assets (i.e., the Debtor's patent portfolio and related assets, including anonymous data and related intellectual property resulting from the Debtor's diagnostic kits (the "Patent Portfolio") for the purchase price of $7,000,000 plus Assumed Liabilities, as more specifically described in the Psomagen APA attached as Exhibit A to the Stalking Horse Notice.  The Stalking Horse Notice also provided that any Overbid for the Patent Portfolio must be $7,415,000 (i.e., $7,000,000 plus 4.5% in Bid Protections plus a $100,000 Bid Increment).

11. On December 15, 2019, my counsel at PSZJ distributed Auction rules (the "Auction Rules") to all Qualified Bidders.  The Auction Rules were also provided to parties attending the Auction in person at PSZJ's office.  All bidders in attendance were required on the record of the Auction to confirm that they would abide by the Bidding Procedures and the Auction Rules and that they had not and would not engage in any collusion with respect to the Auction or sale process.  A copy of the Auction Rules was submitted as Exhibit B to the Auction transcript.  A copy of the Auction transcript is filed at Docket No. 249.

12. On December 16, 2019, I conducted the Auction of certain of the Debtor's Assets in certain lots, including (a) the patent portfolio and database information; (b) laboratory equipment; and (c) unused inventory.

13. Seven Qualified Bidders participated in the Auction, either in person or by phone.

14. The Qualified Bidders were interested in various Assets of the Debtor and some Qualified Bids included portions of some Assets but not others, while other Qualified Bids included multiple categories of Assets.  Notwithstanding the mixed interest in the Assets for sale,

4

the Trustee permitted all Qualified Bidders to bid on any of the Assets at the Auction, even if the Qualified Bidder did not include certain categories of Assets in its bid.

15. The Auction began at approximately 10:34 a.m. (Eastern time) at the offices of Pachulski Stang Ziehl & Jones LLP, 919 North Market Street, 16th Floor, Wilmington, Delaware 19801.

*Patent Portfolio and Equipment Assets*

16. The auction for the Patent Portfolio began with the opening Stalking Horse Bid from Psomagen for a purchase price of $7,000,000. No other Qualified Bidders submitted an overbid for $7,415,000. The Auction for the Patent Portfolio was then closed and Psomagen was declared the Successful Bidder for the Patent Portfolio.

17. Next, I conducted an Auction of the Debtor's laboratory equipment (the "Equipment Assets") located the Debtor's leased locations. The opening bid for the Equipment Assets was from Heritage Global Partners, Inc. for the purchase price of $30,000, with bid increments of $10,000. The next overbid for the Equipment Assets was from Vitagene, Inc. for the purchase price of $40,000. At the request of Heritage, the bid increments were then reduced to $5,000. The next overbid for the Equipment Assets was from Heritage for the purchase price of $45,000. The next overbid for the Equipment Assets was from Psomagen for $50,000. No other Qualified Bidders submitted an overbid above $50,000. The Auction for the Equipment Assets was then closed and Psomagen was declared the Successful Bidder for the Equipment Assets.

18. At the conclusion of the Auction, I determined to adjourn the Auction to a date to be determined as to the Debtor's remaining assets, including the unused inventory and the customer list.

*Approval of Sale*

19. As Trustee, I am seeking to sell the Patent Portfolio and Equipment Assets to Psomagen pursuant to the Asset Purchase Agreement (the "Psomagen APA") for the purchase price of $7,050,000. A copy of the proposed form of sale order for the Psomagen APA was filed with a notice at Docket No. 251, and served on applicable notice parties.

20. The sale process, sale, and purchase price for the Patent Portfolio and Equipment Assets was not tainted by fraud, collusive bidding, or other misconduct, and all negotiations were conducted in good faith and at arm's length with the Trustee and Psomagen.

21. The total consideration for the Patent Portfolio and Equipment Assets provided for in the Psomagen APA and the transactions contemplated thereby represent a fair and reasonable purchase price and constitute the highest and best offer obtainable for the Patent Portfolio and Equipment Assets and constitute reasonably equivalent value, fair consideration, and fair value.

22. The Psomagen APA and the transactions contemplated thereby present the best opportunity to maximize value for the Debtor's estate and provide the best possible recovery for the Debtor's creditors in these circumstances.

23. The Psomagen APA and the sale to Psomagen does not involve any contracts or leases that are to be assumed and assigned that were identified by the Trustee, and, thus, there are no cure or adequate assurance issues.

24. In addition, I have instructed Psomogen that it needs to have all of the Equipment Assets and any samples removed from the Debtor's two leased premises located at 360 Langston Street, San Francisco, CA 94107 and 1201 5th Street, San Francisco CA 94107, by December 31, 2019, or in the alternative pay the rent for each of the Debtor's leased locations

until the purchased assets are removed from the leased locations.  There should be no cost for any rent or storage incurred by the estate for these two locations, beyond December 31, 2019.  Those costs will be borne solely by Psomogen.

25. I believe that the sale to Psomagen pursuant to the Psomagen APA, as modified by the proposed Sale Order, which modifications were made after consulting with the Consumer Privacy Ombudsman, is consistent with the recommendations in the *Report of the Consumer Privacy Ombudsman* [Docket No. 252], filed by Elise S. Frejka, the Consumer Privacy Ombudsman appointed on December 9, 2019.  *See* Docket No. 242 (Notice of Appointment of Consumer Privacy Ombudsman).

26. Psomagen is not an "affiliate" or "insider" of the Debtor as such terms are defined by the Bankruptcy Code.

27. The sale of the Patent Portfolio and Equipment Assets to Psomagen pursuant to the Psomagen APA is in the best interests of the Debtor's estate and creditors and represents the highest and best bid for those Assets.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Dated:  December 18, 2019                    */s/ Alfred T. Giuliano*
                                                         Alfred T. Giuliano
                                                         Chapter 7 Trustee for the Estate of
                                                         uBiome, Inc.