**<u>Exhibit A</u>**

**Proposed Order**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 7 |
| UBIOME, INC.,[1] | Case No. 19-11938 (LSS) |
| Debtor. | |
| | **Re: Docket No. ___** |

**ORDER GRANTING MOTION OF ALFRED T. GIULIANO, CHAPTER 7 TRUSTEE,**
**TO APPROVE SETTLEMENT AGREEMENT WITH SILICON VALLEY BANK,**
**8VC FUND I, L.P., AND ENTREPRENEURS FUND I, L.P.**

Upon consideration of the *Motion of Alfred T. Giuliano, Chapter 7 Trustee, to Approve Settlement Agreement with Silicon Valley Bank, 8VC Fund I, L.P., and Entrepreneurs Fund I, L.P.* (the "Motion") of Alfred T. Giuliano, chapter 7 trustee (the "Trustee") to the estate of the above-captioned debtor (the "Debtor"), for entry of an order (this "Order"), pursuant to sections 105(a) and 363(b) of the Bankruptcy Code and Bankruptcy Rule 9019, approving a Settlement Agreement and Release (the "Settlement Agreement")[2] between the Trustee and Silicon Valley Bank ("SVB" or "Prepetition Lender"), 8VC Fund I, L.P. ("8VC Fund") and 8VC Entrepreneurs Fund I, L.P. ("8VC EFI," and together with 8VC Fund, "8VC" or "Participant") (collectively, SVB and 8VC are referred to as the "DIP Lenders", and together with the Debtor and the Trustee, the "Parties"), a copy of which Settlement Agreement is attached to this Order as Exhibit 1; the Court having reviewed the Motion and the Settlement Agreement and having considered the record with respect to the Motion; the Court having found that (a) the Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for the District of Delaware*, dated

---

[1] The Debtor and the last four digits of its taxpayer identification number is: uBiome, Inc. (0019).  The headquarters for the above-captioned Debtor was located at 360 Langton Street, Suite 301, San Francisco, CA 94103.

[2] Capitalized terms not otherwise defined herein shall have the meaning given to them in the Settlement Agreement.

February 29, 2012, and that this Court may enter a final order consistent with Article III of the

United States Constitution**,** (b) this is a core proceeding pursuant to 28 U.S.C. § 157(b), (c)

notice of the Motion was sufficient under the circumstances and in full compliance with

Bankruptcy Rule 2002 and the local rules of this Court, (d) the Settlement Agreement (i) is the

product of good faith, arms' length negotiations among the Parties, without collusion, (ii) is fair,

reasonable, appropriate and in the best interests of the Debtor's estate and (iii) represents a sound

exercise of the Trustee's business judgment and (e) each of the Parties to the Settlement

Agreement provided sufficient consideration for the transactions contemplated by the Settlement

Agreement; and the Court having determined that the legal and factual bases set forth in the

Motion establish just cause for the relief granted herein; IT IS HEREBY ORDERED THAT:

      1.      The Motion is granted as set forth herein.

      2.      The terms of the Settlement Agreement attached hereto as <u>Exhibit 1</u> is

APPROVED in their entirety pursuant to sections 105(a) and 363(b) of the Bankruptcy Code and

Bankruptcy Rule 9019.

      3.      The Parties are hereby authorized to take such additional actions or

execute such additional documents as are necessary or appropriate to implement the terms of the

Settlement Agreement.  The Trustee may make any payments required under the Settlement

Agreement by wire or check.

      4.      Notwithstanding the possible applicability of Rules 6004, 7062, or 9014 of

the Bankruptcy Rules, any other Bankruptcy Rule, this Order shall be immediately effective and

enforceable upon its entry and there shall be no stay of effectiveness or execution of this Order.

DOCS_DE:232099.3 31271/001

5.      The Court shall retain exclusive jurisdiction over any and all matters

arising from or related to the implementation, interpretation, or enforcement of the Settlement

Agreement or this Order.

DOCS_DE:232099.3 31271/001

## EXHIBIT 1

### Settlement Agreement

## SETTLEMENT AGREEMENT AND MUTUAL RELEASE

This *Settlement Agreement and Mutual Release* (the "Settlement Agreement") is entered into by and between Alfred T. Giuliano, chapter 7 trustee (the "Trustee") to the estate of uBiome, Inc. (the "Debtor") [1], and not in any individual capacity, on the one hand, and Silicon Valley Bank ("SVB" or "Prepetition Lender"), 8VC Fund I, L.P. ("8VC Fund") and 8VC Entrepreneurs Fund I, L.P. ("8VC EFI," and together with 8VC Fund, "8VC" or "Participant") (collectively, SVB and 8VC are referred to as the "DIP Lenders"), on the other hand.  The DIP Lenders, the Debtor, and the Trustee may be referenced herein collectively as the "Parties" and/or each as a "Party."

## RECITALS

WHEREAS, on February 24, 2017, the Debtor and SVB, as Prepetition Lender, entered into that certain Loan and Security Agreement (as amended, supplemented, or otherwise modified, the "Prepetition Loan Agreement" and, together with all other agreements, documents, and instruments executed and/or delivered in connection therewith, the "Prepetition Loan Documents").

WHEREAS, on September 4, 2019 (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court"), thereby commencing the chapter 11 case.

WHEREAS, on September 6, 2019, the Bankruptcy Court entered the *Interim Order (I) Authorizing the Debtor to Obtain Postpetition Secured Financing, (II) Authorizing the Use of Cash Collateral, (III) Granting Liens and Superpriority Administrative Expense Status,*

---

[1]The Debtor and the last four digits of its taxpayer identification number is: uBiome, Inc. (0019).

*(IV) Granting Adequate Protection, (V) Modifying the Automatic Stay, and (VI) Scheduling a Final Hearing* [Docket No. 47] (the "Interim DIP Order").

WHEREAS, on October 11, 2019 (the "Conversion Date"), the Court entered an order converting this case to a case under chapter 7 [Docket No. 162], and Alfred T. Giuliano was appointed as the chapter 7 trustee [Docket No. 163].

WHEREAS, on November 25, 2019, the Bankruptcy Court entered the *Order Approving Interim Stipulation By and Between Chapter 7 Trustee for the Estate of uBiome, Inc. and Silicon Valley Bank Regarding Cash Collateral* [Docket No. 218] (the "Cash Collateral Stipulation Order") approving the Stipulation attached thereto.

WHEREAS, pursuant to the Cash Collateral Stipulation Order and the approved Stipulation, the Trustee and SVB agreed that, among other terms:

(a) the approved Stipulation was an interim stipulation and a final stipulation would be submitted and the parties would negotiate a final stipulation and negotiate in good faith a carveout for payment of the Trustee's professional fees and the possibility of a carveout (the "Carveout") from the prepetition collateral for an amount to be available for allowed claims of creditors and a release of any claims and causes of action against SVB and the Participant (Stipulation ¶3);

(b) the Trustee reserved all rights to assert any applicable Challenge (as defined in the Interim DIP Order) and the rights, claims, and defenses of SVB in opposition to any such Challenge were preserved (Stipulation ¶4);

(c) the Parties agreed to extend the Challenge Deadline through and including December 20, 2019 with further extensions mutually agreed in writing (which the Parties have continued to agree to extend in light of ongoing negotiations) (Stipulation ¶5); and

(d) the Trustee reserved all rights to assert surcharge under section 506(c) of the Bankruptcy Code against the DIP Lender, the Prepetition Lender, the DIP Collateral, or the Prepetition Collateral, and SVB reserved all rights, claims, and defenses of SVB in opposition to any such request to surcharge under section 506(c) (Stipulation ¶6).

DOCS_DE:232090.6 31271/001

WHEREAS, on December 19, 2019, the Bankruptcy Court entered the *Order (I) Approving Sale of Intellectual Property and Other Assets Free and Clear of All Liens, Claims, Rights, and Other Interests and (II) Granting Other Related Relief* [Docket No. 263] (the "<u>Sale Order</u>") approving the sale (the "<u>Sale</u>") of certain of the Debtor's assets to Psomagen, Inc.

WHEREAS, pursuant to the Sale, the Trustee is holding remaining Sale proceeds in the amount of not less than $3,050,000 (the "<u>Sale Proceeds</u>").

WHEREAS, the Trustee and SVB and 8VC have discussed the resolution of issues relating to the unresolved issues reserved by the Stipulation, including the Challenge, surcharge rights under section 506(c) and the Carveout, and have engaged in good faith, arms' length negotiations.

## <u>TERMS AND CONDITIONS</u>

NOW THEREFORE, for good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the Parties hereby agree that:

1.    **Recitals.**  The recitals set forth above are true and correct and incorporated herein by reference.

2.    **Distribution of Sale Proceeds**.  The remaining Sale Proceeds shall be distributed as follows:

(a)    $1,283,000 to fund the Trustee's fees and expenses in connection with the Sale;

(b)    $272,000 shall be paid to SVB (to be distributed to the DIP Lenders in accordance with the Participation Agreement (as defined herein)) within three (3) business days of the Settlement Effective Date (as defined below) as a return of cash collateral;

3

(c)    Within three (3) business days of the Settlement Effective Date, the Trustee shall pay $700,000 of the remaining Sale Proceeds to SVB (to be distributed to the DIP Lenders in accordance with the Participation Agreement) and the balance shall be paid to the Debtor's estate for distribution in accordance with the priorities of the Bankruptcy Code;

(d)    The Participation Agreement (as defined in the Interim DIP Order) remains in full force and effect and the terms of the Participation Agreement, including, without limitation, the subordination and *pari passu* treatment and payments provisions contained therein, are valid and enforceable and are binding on SVB and 8VC.

3.    **SVB Deficiency Claim.**  SVB shall retain its deficiency claim against the Debtor's estate in the amount of not less than $4,869,190.89 for the remaining unpaid amounts arising from the Debtor's obligations under the DIP Facility (as defined in the Interim DIP Order) and the Prepetition Loan Documents (the "SVB Deficiency Claim").  The SVB Deficiency Claim shall be an allowed general unsecured, non-priority claim and shall receive any distribution as and when such claims are paid in the Debtor's chapter 7 case; provided, that SVB shall distribute any such distributions to the DIP Lenders in accordance with the Participation Agreement.

4.    **Settlement Effective Date.**  The effective date of this Settlement Agreement and all of its terms shall be the later of (i) execution by all Parties, or (ii) the date an order approving this Settlement Agreement is entered by the Court (the "Settlement Effective Date").

5.    **Trustee's Release.**  Effective upon payment of the amounts in paragraphs 2(b) and 2(c) of this Settlement Agreement, the Debtor, the Debtor's estate, and the Trustee, solely in his capacity as chapter 7 trustee of the Debtor, and not in any individual or other

4

capacity, shall be deemed to have irrevocably, absolutely, and unconditionally, fully, finally and forever waived, released, acquitted and discharged each DIP Lender (including, without limitation, each of SVB, 8VC Fund, and 8VC EFI) and each of their respective predecessors, successors and assigns, and affiliates (collectively, "Related Parties") and each of the DIP Lenders' and the Related Parties' respective current and former (i) subsidiaries, (ii) affiliates, (iii) officers, (iv) directors, (v) managers, (vi) principals, (vii) members, (viii) employees, (ix) agents, (x) advisory board members, (xi) financial advisors, (xii) partners, (xiii) attorneys, (xiv) accountants, (xv) investment bankers, (xvi) consultants, (xvii) representatives, (xviii) other professionals, (xix) shareholders, (xx) management companies, (xxi) other professionals, and their respective heirs, executors, estates, servants and nominees (collectively, with the DIP Lenders and the Related Parties, the "DIP Lenders' Releasees") from any and all claims, manner of actions, causes of action whatsoever (including any and all derivative claims), suits, costs, debts, liabilities, obligations, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, agreements, promises, variances, trespasses, damages, judgments, executions and demands whatsoever, of whatever kind or nature, whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, suspected or unsuspected, foreseen or unforeseen, asserted or unasserted, accrued or unaccrued, existing or hereinafter arising, whether in law or equity, whether sounding in tort or contract, whether arising under federal or state statutory or common law, or any other applicable international, foreign, or domestic law, rule, statute, regulation, treaty, right, duty, requirement or otherwise which either the Trustee and/or the Debtor's estate has, had, may have, or may claim to have against any of the DIP Lenders' Releasees.

6.      **The DIP Lenders' Releases.**  Effective upon payment of the amounts in paragraphs 2(b) and 2(c) of this Settlement Agreement, except for the SVB Deficiency Claim, the DIP Lenders' Releasees shall be deemed to have irrevocably, absolutely, and unconditionally, fully, finally and forever waived, released, acquitted and discharged the Trustee, the Debtor and its bankruptcy estate, and the past or present successors and assigns of any of them (collectively, the "Trustee Releasees"), from any and all claims, manner of actions, causes of action, suits, costs, debts, liabilities, obligations, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, agreements, promises, variances, trespasses, damages, judgments, executions and demands whatsoever, of whatever kind or nature, whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, suspected or unsuspected, foreseen or unforeseen, asserted or unasserted, accrued or unaccrued, existing or hereinafter arising, whether in law or equity, , whether sounding in tort or contract, whether arising under federal or state statutory or common law, or any other applicable international, foreign, or domestic law, rule, statute, regulation, treaty, right, duty, requirement or otherwise which the DIP Lenders' Releasees has, had, may have, or may claim to have against any of the Trustee Releasees.

7.      For the avoidance of doubt, subject to Paragraph 5 hereof, nothing in this Settlement Agreement releases or waives any rights, claims, or causes of action that the Debtor, the Debtor's estate, or the Trustee has or may have against any other current and former subsidiaries, affiliates, founders, officers, directors, managers, principals, members, employees, agents, advisory board members, financial advisors, partners, attorneys, accountants, investment bankers, consultants, representatives, other professionals, shareholders, management companies, or other professionals of the Debtor, or any of their respective heirs, executors,

estates, servants and nominees; provided, however, for the avoidance of doubt, that the DIP

Lenders' Releasees shall be released in all of their respective capacities, including, without

limitation, in each capacity as set forth in this paragraph 7, and this paragraph 7 shall in no way

limit the language of paragraph 5 or any other provision of this Settlement Agreement with

respect to the DIP Lenders, the Related Parties, or the DIP Lenders' Releasees.

8.     **No Admissions.**  This Settlement Agreement is not and shall not in any

way be construed as an admission by the Parties of any allegations made by any of the Parties,

either formally or informally.

9.     **Expenses.**  The Parties shall bear their own costs, expenses, and attorneys'

fees incurred to date in connection with this Settlement Agreement.  In the event of any dispute

in connection with the enforcement of this Settlement Agreement, the prevailing Party shall be

entitled to its reasonable attorneys' fees, costs and all necessary disbursements and out-of-pocket

expenses, whether statutorily approved or non-approved costs, incurred in connection with such

action or proceeding, as determined by the Court.

10.     **Severability.**  The Parties agree that if any provision of this Settlement

Agreement is determined by a court of competent jurisdiction to be illegal, invalid or

unenforceable, that provision shall not be a part of this Settlement Agreement.  The legality,

validity and enforceability of the remaining provisions shall not be affected by a provision of this

Settlement Agreement that is illegal, invalid, or unenforceable.

11.     **Miscellaneous.**

(a)     Neither this Settlement Agreement, nor any statement made or

action taken in connection with the negotiation of this Settlement Agreement, shall be offered or

received in evidence or in any way referred to in any legal action or administrative proceeding

7

among or between the Parties hereto, other than as may be necessary (i) to obtain approval of and to enforce this Settlement Agreement (including the mutual releases contained herein) or (ii) to seek damages or injunctive relief in connection therewith.

(b)    Each of the Parties hereto shall execute and deliver any and all additional papers, documents and other assurances, and shall do any and all acts and things reasonably commercially necessary or appropriate in conjunction with the performance of each of the Parties' respective obligations hereunder.

(c)    No provision of this Settlement Agreement is intended to confer any rights, benefits, remedies, obligations or liabilities hereunder upon any person other than the Parties hereto and their respective successors.

(d)    This Settlement Agreement shall be governed by and construed in accordance with the law of the State of Delaware without regard to any choice of law provisions.

(e)    This Settlement Agreement may be signed in counterpart originals and delivered by email, which, when fully executed, shall constitute a single original.

(f)    The Bankruptcy Court shall retain exclusive jurisdiction (and the Parties consent to such retention of jurisdiction) with respect to any disputes arising from or related to, or other actions to interpret, administer or enforce the terms and provisions of, this Settlement Agreement.

(g)    If this Settlement Agreement is not approved by the Court, then the Settlement Agreement shall be null and void and of no force or effect.  In such event, each of the Parties shall be returned to the Parties' position *status quo ante*, and the Parties reserve all of their respective rights, claims, and defenses with respect to all of the matters set forth herein, and the Challenge Period shall be extended to ten (10) days beyond the date that the Bankruptcy

8

Court enters an Order denying a motion to approve this Agreement (the "Extended Challenge Period"); provided, however, that the Extended Challenge Period may be further extended by agreement of each of the Parties or by Order of the Court.

(h)    Any statute or period of limitations, statutes of repose, or other time-based limitations or defenses, whether at law, in equity, under statute, contract, or otherwise (including, but not limited to, the doctrine of laches or waiver), which might be asserted as a time bar and/or limitation is hereby tolled until the Settlement Effective Date.  Nothing in this Settlement Agreement shall operate to revive or extend the time for filing any claim that is now time barred or barred by any applicable statute or period of limitations, statutes of repose, or other time-related defense as of the date this Settlement Agreement is executed as set forth below.

(i)    Each person or entity who executes this Settlement Agreement on behalf of another person or entity represents and warrants that he, she, or it is duly authorized to execute this Settlement Agreement on behalf of such person or entity, has the requisite authority to bind such person or entity, and such person or entity has full knowledge of and has consented to this Settlement Agreement.  The representations and warranties set forth in this paragraph shall survive execution of this Settlement Agreement.

(j)    In executing the Settlement Agreement, each of the Parties represents and warrants, for itself, that: (a) it does so with full knowledge of its available rights, (b) it is not relying and has not relied upon any representations made by any person with regard to the Settlement Agreement, other than any written representations and agreements contained herein, (c) it has had available to it such information as it or its counsel considered necessary to making an informed judgment concerning the Settlement Agreement, and (d) it has conducted such investigation as it or its counsel deemed appropriate regarding the settlement and its rights

9

and asserted rights in connection with the matters that are the subject of the Settlement Agreement.

(k)    The Parties acknowledge that this Settlement Agreement constitutes the entire agreement between the Parties with respect to the subject matter hereof, and all prior agreements, negotiations and understandings with respect to the subject matter hereof are canceled and superseded by this Settlement Agreement.

(l)    This Settlement Agreement shall not be modified, altered, amended or vacated without the written consent of all parties hereto and an order of the Court.

(m)    This Settlement Agreement shall inure to the benefit of and be binding upon the successors and assigns of the Parties hereto.

(n)    The headings of all sections of this Settlement Agreement are inserted solely for the convenience of reference and are not a part of and are not intended to govern, limit, or aid in the construction or interpretation of any term or provision hereof.

IN WITNESS WHEREOF, this Settlement Agreement is hereby executed as of

the date(s) set forth below:

ACCEPTED AND AGREED TO BY:

ALFRED T. GIULIANO, CHAPTER 7
TRUSTEE

By: _____          Dated: 2/24 , 2021

Alfred T. Giuliano, solely in his capacity
as Chapter 7 Trustee of uBiome, Inc.

SILICON VALLEY BANK          Dated: 2/24 , 2021

By: _____
Name: Justin Mauch
Title: Director

8VC FUND I, L.P. AND 8VC          Dated: _____, 2021
ENTREPRENEURS FUND I, L.P.

By: _____
Name:
Title:

11

DOCS_DE:232090.6 31271/001

IN WITNESS WHEREOF, this Settlement Agreement is hereby executed as of

the date(s) set forth below:

ACCEPTED AND AGREED TO BY:

ALFRED T. GIULIANO, CHAPTER 7
TRUSTEE

By: _____          Dated: 2/24_____ , 2021

Alfred T. Giuliano, solely in his capacity
as Chapter 7 Trustee of uBiome, Inc.


SILICON VALLEY BANK                            Dated: _____ , 2021


By: _____
Name:
Title:


8VC FUND I, L.P. AND 8VC                       Dated: 2/24_____ , 2021
ENTREPRENEURS FUND I, L.P.


By: _____
Name: Ian M. Shannon
Title:    Authorized Signatory of 8VC GP I,
          LLC, its general partner

11