# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br>UBIOME, INC.,<br><br>                Debtor. | Chapter 7<br><br>Case No. 19-11938-LSS<br><br>**Objection Deadline**:<br>February 1, 2022, at 4:00 p.m. (ET)[1]<br><br>**Hearing Date**:<br>February 8, 2022, at 10:00 a.m. (ET)<br><br>Ref. D.I. 452 & 453 |

## PUTATIVE DEFENDANTS' LIMITED APPEARANCE AND OBJECTION TO MOTION OF ALFRED T. GIULIANO, CHAPTER 7 TRUSTEE, FOR ORDER AUTHORIZING THE ABANDONMENT OF ELECTRONIC DOCUMENTS STORED WITH AMAZON WEB SERVICES, AND TO PERMIT THIRD PARTIES TO PRESERVE SUCH DOCUMENTS

Dr. Jessica Richman and Dr. Zachary Apte ("Putative Defendants") have been named as defendants in Adversary Proceeding No. 21-51032 (the "Adversary Proceeding") filed by the chapter 7 trustee in this case (the "Trustee"), although they have not yet been served a copy of the Trustee's complaint.[2] Adv. D.I. 3.[3] As Putative Defendants, they appear for the limited purpose of preserving their rights (this "Objection") in connection with the *Motion of Alfred T. Giuliano, Chapter 7 Trustee, for Order Authorizing the Abandonment of Electronic Documents Stored with Amazon Web Services, and to Permit Third Parties to Preserve Such Documents* [D.I. 452 & 453]

---

[1] Extended by agreement of the Trustee.

[2] On December 27, 2021, the Court issued a letter ruling and order denying the Trustee's motion for alternative service, requiring the Trustee to attempt service of the complaint in accordance with Rule 4(f) of the Federal Rules of Civil Procedure. Adv. D.I. 19, 21, respectively.

[3] References to "D.I." shall refer to the Debtor's main bankruptcy case and references to "Adv. D.I." shall refer to Adv. Proc. No.: 21-51032 (LSS). Capitalized terms used but not otherwise defined in this Objection shall have the meanings ascribed to them in the Abandonment Motion.

(the "Abandonment Motion") in the event they are ultimately served with the Trustee's complaint. In support of this Objection, Putative Defendants respectfully state as follows:

**PRELIMINARY STATEMENT**

1. The Abandonment Motion seeks authorization to destroy documents that the Court has previously ordered preserved. D.I. 263. The timing of the Trustee's motion is deeply puzzling. After waiting two years after his appointment to file suit against Dr. Richman and Dr. Apte, the Trustee now seeks to destroy the very evidence that may be relevant to his proposed complaint on the ground that preserving that evidence suddenly imposes a burden on and is of inconsequential value to the estate. Abandonment Mot. ¶ 9 ("[T]he Trustee has no further use for the Documents stored with AWS and the estate continues to incur significant costs as a result of AWS fees."). The Abandonment Motion threatens to destroy potentially valuable evidence and may cause irreparable harm to the Putative Defendants.

2. While the Trustee's motion states the Trustee has access to the subset of documents that "he believes are needed by the estates [sic]" to maintain his proposed suit against Putative Defendants, the Trustee is unable or unwilling to provide any details regarding the specific documents he proposes to abandon. It is thus difficult to conceive that the Trustee could ensure that his motion will not result in the destruction of materials relevant to his proposed claims.

3. Moreover, the Trustee fails to explain how, at this prelitigation stage, he is able to foresee each and every document that may be relevant to his claims or Putative Defendants' future defenses. The Trustee's requested relief runs contrary to the well-settled principle that a party has a duty to preserve evidence it knows or reasonably should know is relevant to an action and cannot destroy evidence that *may* be useful to an adversary. It further contravenes the requirement that a trustee maintain property that is necessary for estate administration.

4. The Trustee nonetheless claims that because he has incurred document preservation costs over the two years since his appointment, the expense of further document retention is now too burdensome to continue. Yet, the Trustee has failed to explain how he mitigated those past storage costs, if at all, before filing suit or why those prior costs justify the request to destroy potentially relevant evidence now.

5. Although appointed in October 2019, the Trustee waited until the statute of limitation's deadline to commence this Adversary Proceeding in September 2021. The Trustee's two-year delay in addressing the cost of document maintenance might be understandable if he had used that time to review those materials and investigate potential claims. The Trustee's failure to provide any details regarding the contents of the materials subject to his motion suggests that review never occurred. Moreover, the Trustee's complaint, which is a largely *verbatim* copy of a complaint filed against Putative Defendants by the U.S. Securities and Exchange Commission ("SEC") in March 2021, further suggests the Trustee conducted no investigation whatsoever. *See S.E.C. v. Richman*, *et al.*, Case No. 21-cv-01911-CRB (N.D. Cal.), Dkt. 1.

6. After that two-year delay, the Trustee seeks to limit the expense of document maintenance now by either imposing the costs of storage on Putative Defendants (or government agencies that are not party to the Adversary Proceeding) or simply destroying potentially relevant evidence upon which the parties may later need to rely. The Putative Defendants should not bear the costs of the Trustee's delay and/or inefficiencies, and the Trustee cannot simply discard evidence because he expended estate assets prior to filing suit. The Trustee should not be permitted to delete materials relevant to the litigation he seeks to initiate, nor impose on others his obligations as a proposed plaintiff and as Trustee. The Abandonment Motion should be denied.

## BACKGROUND

7. Dr. Jessica Richman and Dr. Zachary Apte were co-founders, directors, and among the executives of uBiome, Inc. (the "Debtor"). Dr. Richman served as a Chief Executive Officer of the Debtor. Dr. Apte served as a Chief Technology Officer and later as a co-Chief Executive Officer of the Debtor.

8. The Debtor filed its voluntary chapter 11 petition for relief on September 4, 2019. On October 11, 2019, the Debtor's chapter 11 case was converted to one under chapter 7 and Alfred T. Giuliano was appointed as the Trustee.

9. In March 2021, the SEC commenced a civil action against Dr. Richman and Dr. Apte in connection with their work while employed by the Debtor. *See Richman*, Case No. 21-cv-01911, Dkt. 1 (N.D. Cal March 18, 2021). Dr. Richman and Dr. Apte have also been named as defendants in a federal criminal proceeding and are also claimants in a related civil forfeiture action. *See* D.I. 420 (describing the pending actions brought by the SEC and the Department of Justice ("DOJ")).[4]

10. In the course of its business operations, "the Debtor maintained significant information in a database and through other cloud-based third party vendors, including through [AWS], Atlassian, Github, and Google." D.I. 475 ¶ 6. Upon his appointment, the Trustee received the Debtor's electronic documents, which he has preserved on Amazon Web Services Simple Storage Solution ("AWS").

11. Beginning no later than January 2020, the Trustee retained FTI Consulting, Inc. ("FTI"), to assess and extract marketable data from the materials maintained by AWS for sale.

---

[4] In addition, "the estate is subject to a $7.8 million claim [under the False Claims Act] for the same alleged acts subject to the civil and criminal actions" against Dr. Richman and Dr. Apte. D.I. 426 ¶ 3.

D.I. 475 ¶ 15. Since its engagement, FTI has billed the estate approximately $177,644.51, including nearly $100,000 in passed through AWS storage costs.[5] Abandonment Mot. ¶¶ 6-7, 9.

12. In April 2020, the Court entered an Order authorizing the sale of the Debtor's IP assets. D.I. 263, 309. That Sale Order required the Trustee to preserve and maintain the Debtor's Documents, although it is not clear whether the Trustee has complied with that Order.[6] According to the Trustee, the SEC required the Trustee to maintain the Documents in order for the SEC to withhold its objection to the proposed sale. *Id.* ¶ 7; D.I. 426 ¶ 17. The continued preservation of the Documents is also consistent with the Trustee's statutory duties. *See, e.g.*, 11 U.S.C. § 704(a)(2); Fed. R. Bankr. P. 2015.

13. Two years after the bankruptcy filing, and after claiming to incur an additional nearly $500,000 in AWS storage costs, on September 2, 2021 the Trustee filed his Adversary Proceeding Complaint against Putative Defendants.

14. On December 16, 2021—after commencing the Adversary Proceeding, and before the Court's December 27, 2021 order regarding the issue of service—the Trustee filed the

---

[5] D.I. 305 (order granting first interim fee application and awarding FTI $47,512.50 in fees and $0 in expenses for the period January 20, 2020 through March 6, 2020); D.I. 326 (order granting second interim fee application and awarding FTI $9,760.00 in fees and $601.55 in expenses for the period March 7, 2020 through May 19, 2020); D.I. 347 (order granting third interim fee application and awarding FTI $11,550.00 in fees and $74.43 in expenses for the period May 20, 2020 through July 31, 2020); D.I. 374 (order granting fourth interim fee application and awarding FTI $2,625.00 in fees and $0.00 in expenses for the period August 1, 2020 through November 30, 2020); D.I. 414 (order granting fifth interim fee application and awarding FTI $9,712.50 in fees and $59,475.00 in AWS storage expenses for the period December 1, 2020 through March 31, 2021); D.I. 454 (order granting sixth interim fee application and awarding $0 in fees and $36,333.53 in AWS storage expenses for the period April 1, 2021 through July 31, 2021).

[6] The documents, which are identified by category in Exhibit B to the Trustee's Abandonment Motion, are hereinafter referred to as the "Documents." *See* Abandonment Mot., Ex. B. However, it is not clear from Exhibit B that the Debtor has maintained copies of *all* of the Debtor's Documents and, as set forth herein, the Trustee refuses to provide any details regarding the categories of materials identified in Exhibit B that would reveal if the Trustee has adhered to the Court's Order.

Abandonment Motion, seeking authority to abandon certain Documents if third parties (namely the Putative Defendants or government) did not want to incur the cost to retain them.

15. Because the Trustee's motion may implicate the ability of Putative Defendants to defend themselves against the Trustee's allegations, they asked the Trustee to identify further the materials listed in Exhibit B to his motion that he proposed to abandon. In particular, the Putative Defendants asked the Trustee:

1. For each Count/Bucket in Exhibit B, please list the total size of the information referenced;
2. For each Count/Bucket that exceeds 1 TB, please provide us with a list of the files contained in that grouping; and
3. For each file, please list the file-size, filename, file-path, and/or any metadata or other identifying information associated with those files.

*See* Declaration of Brett D. Fallon, attached hereto as **Schedule A** ("Fallon Decl.") at Ex. 1.

16. The Putative Defendants subsequently reiterated these requests orally and in writing. *See* Fallon Decl. at Ex. 2. The Trustee, however, was unwilling or unable to provide the requested information.

## OBJECTION

**A. The Trustee Has An Obligation To Preserve The Debtor's Documents.**

17. The Trustee's Abandonment Motion ignores his obligation, as the plaintiff in the Adversary Proceeding, to maintain the Documents. The Trustee is seeking to abandon potentially relevant materials before Dr. Richman or Dr. Apte have even been served with the complaint, and well before they have answered the complaint or asserted their defenses. It is therefore not possible that the Trustee could reasonably know what documents are relevant to his claims or Dr. Richman and Dr. Apte's defenses.

18. In general, "[a] party has a duty to preserve evidence it knows or reasonably should know is relevant to the action." *Magnetar Techs. Corp. v. Six Flags Theme Park Inc.*, 886 F. Supp. 2d 466, 480 (D. Del. 2012) *aff'd sub nom*. No. CV 07-127-LPS-MPT, 2014 WL 545440 (D. Del. Feb. 7, 2014); *see Apple Inc. v. Samsung Elecs. Co.*, 888 F. Supp. 2d 976, 990 (N.D. Cal. 2012) (acknowledging that "the duty to preserve relevant evidence may arise even before litigation is formally commenced"); *see also* Fed. R. Civ. P. 37(e) (requiring litigants to preserve electronically stored information). The duty to preserve applies with respect to both affirmative claims and an adversary's defenses. *See, e.g.*, *Broccoli v. Echostar Commc'ns Corp.,* 229 F.R.D. 506, 510 (D. Md. 2005) ("The duty to preserve encompasses any documents or tangible items authored or made by individuals likely to have discoverable information that the disclosing party may use to support its claims or defenses."); *Zubulake v. UBS Warburg LLC*, 220 F.R.D. 212, 217 (S.D.N.Y. 2003) ("[A]nyone who anticipates being a party or is a party to a lawsuit must not destroy unique, relevant evidence that might be useful to an adversary.").

19. In addition, the duty to preserve is also imposed on third parties where, as here, the third party has reason to know that the documents are relevant to pending or future litigation. *See, e.g.*, *Lofton v. Verizon Wireless (VAW) LLC*, 308 F.R.D. 276, 286 (N.D. Cal. 2015) (imposing sanctions on third party for destruction of evidence where third party was on notice that it should preserve relevant ESI because it had previously been involved in a similar lawsuit).

20. The Documents are thus a paradigmatic example of materials that are relevant to current and future litigation, and they must be preserved. First, based on the Trustee's cursory accounting of the Documents in Exhibit B to the Abandonment Motion, the Documents apparently contain the type of information that will be relevant to the broad claims asserted by the Trustee (and potentially as well as the DOJ and SEC) challenging the Putative Defendant's involvement

in and knowledge of broad swaths of the Debtor's business. For example, the Documents apparently include "detailed billing information," marketing information, "data on orders and users," and information about uBiome's website and blog. D.I. 453. The Documents are therefore undoubtedly relevant to the Trustee's claims, which are predicated on allegations that the Putative Defendants breached their fiduciary duties and violated their employment contracts by, *inter alia*, allegedly fraudulently inducing doctors and patients to order and insurers to pay for tests, and may very well be relevant to Putative Defendants' potential defenses to those claims.

21. Moreover, this Adversary Proceeding has yet to commence. Putative Defendants have not been served with the Trustee's proposed complaint, let alone answered its allegations, asserted affirmative defenses, or sought discovery. The Trustee simply cannot know the universe of materials that may, over time, be relevant to his claims and/or the Putative Defendants' defenses, and the Trustee cites absolutely no authority for the proposition that he should be allowed "in his sole and absolute discretion" to destroy materials potentially relevant to the lawsuit he intends to initiate before that lawsuit even begins. D.I. 452-2, ¶ 2 (proposed order). In addition, as the Trustee's Abandonment Motion acknowledges, the Documents may reasonably be relevant to both the DOJ and SEC proceedings (upon which he based his own claims). Abandonment Mot. ¶ 10. Thus, the Trustee cannot assure the Court that he intends to preserve *all* of the relevant Documents.[7]

22. Moreover, a trustee has an independent, statutorily imposed obligation to "be accountable for all property received." 11 U.S.C. § 704(a)(2); Fed. R. Bankr. P. 2015 (describing chapter 7 trustee's duty to keep records). "For an asset case, the trustee must retain the paper and

---

[7] The Trustee does not even suggest that he has extracted all of the potentially relevant material to that other ongoing litigation. In addition, the Documents also appear potentially relevant to the government's $7.8 million False Claims Act claim against the estate. *See* D.I. 426 ¶ 14.

electronic case files and estate accounting records for a period of at least two years after the date on which the trustee was discharged and during which a proceeding on the trustee's bond may be commenced." U.S. Dep't of Justice, HANDBOOK FOR CHAPTER 7 TRUSTEES § 5.G.c.1 (2012) (citing 28 U.S.C. § 586). Trustees are also directed to preserve certain estate records to "aid the trustee in the administration of the case, or to support any litigation in the case." *Id.* at § 5.G.d.1. Additionally, in this case, a preexisting order of the Court expressly imposes document preservation obligations on the Trustee. *See* D.I. 263. It is thus clear that the Trustee's proposed abandonment would be a stark divergence from the presumed rule of preservation.

**B.     Abandonment Is Not Permissible Under The Circumstances.**

23.     The doctrine of abandonment does not change this analysis. Section 554 of the Bankruptcy Code provides that, after notice and a hearing, "the trustee may abandon any property of the estate that is burdensome to the estate or that is of inconsequential value and benefit to the estate." 11 U.S.C. § 554. In theory, "[a]bandonment . . . protects bankruptcy estate assets from diminution." *In re Am. Tissue, Inc.*, No. CV 01-10370-KG, 2015 WL 1516973, at *4 (D. Del. Mar. 31, 2015) (quoting *In re NJ Affordable Homes Corp.*, 2013 WL 6048836, at *48 (Bankr. D.N.J. Nov. 8, 2013)); *In re Wilton Armetale, Inc.*, 618 B.R. 424, 432 (Bankr. E.D. Pa. 2020) ("The purpose of allowing abandonment is to protect the estate from the burden of having to administer property that will not benefit unsecured creditors.") (citing *In re Paolella*, 79 B.R. 607, 609 (Bankr. E.D. Pa. 1987)). The Trustee bears the evidentiary burden to prove that the proposed abandoned property meets the Bankruptcy Code's requirements—*i.e.*, that the property is a 'burden' or of inconsequential value and benefit to the estate. *See In re Pilz Compact Disc, Inc.*, 229 B.R. 630, 635 (Bankr. E.D. Pa. 1999); *see also* 5 COLLIER ON BANKRUPTCY ¶ 554.02 (16th ed. 2021) (a bankruptcy "trustee should not . . . abandon property that is necessary for the debtor's fresh start

or other bankruptcy purposes"). In this case, the Trustee cannot prove that the property is a burden or that it is of inconsequential value.

24. As argued above, the Documents are potentially relevant to claims brought by the Trustee, and the Documents may be sought from the Trustee as a third party in other ongoing litigation. These Documents, which the Trustee has a legal duty to preserve, cannot be of "inconsequential value" to the bankruptcy estate.

25. The Trustee nonetheless asserts that abandonment is appropriate and would not prejudice his proposed Adversary Proceeding because, according to the Trustee, he has, with FTI's assistance, extracted those materials "he believes are needed by the estates [sic]." *Id.* ¶ 8. That unsupported assertion cannot be reconciled with the representation that the Documents the Trustee seeks to destroy include "detailed billing information," marketing information, "data on orders and users," and information about uBiome's website and blog, D.I. 453, or the Trustee's apparent inability to provide even basic information about the categories of Documents he seeks to abandon.

26. It is also entirely unclear how FTI assessed and chose to extract the Trustee's preferred Documents from the entirety of the materials maintained by AWS (nor does Exhibit B to the Abandonment Motion provide any clarification in this regard). Even assuming the Trustee directed FTI to extract materials he deemed relevant (or favorable) to his claims, there is no basis to conclude that FTI preserved additional materials relevant to Putative Defendants' (yet to be asserted) potential defenses. Abandoning those documents now could severely prejudice the Putative Defendants in the Trustee's suit.

27. Tellingly, the various cases cited by the Trustee do not support the extraordinary discretion he seeks to exercise here. *See* Abandonment Mot. ¶ 15. In particular, none of those cases addresses whether a trustee is authorized to destroy documents relevant to the litigation he

seeks to initiate (and other ongoing criminal and civil cases). *See id.* (citing *In re Cont. Rsch. Sols., Inc.*, No. 12-11004 KJC, 2013 WL 1910286 (Bankr. D. Del. May 1, 2013) (chapter 11 debtor's proposed abandonment of certain personal property located in a building); *In re Slack*, 290 B.R. 282 (Bankr. D.N.J. 2003) (proposed abandonment of chapter 7 debtor's residence encumbered by tax liens that exceeded the value of such property); *In re Cult Awareness Network, Inc.*, 205 B.R. 575 (Bankr. N.D. Ill. 1997) (proposed abandonment of chapter 7 debtor's files containing information about various controversial religious organizations labeled as "cults"); *In re Reich*, 54 B.R. 995 (Bankr. E.D. Mich. 1985) (Chapter 7 debtors sued trustee for negligence because, rather than abandoning property before the onset of winter, trustee failed to remove or have removed accumulated snow on roof of debtors' grocery store, causing collapse of the building and resulting in a loss of the debtors' exempt equity)). There is no authority that would support the conclusion that the Trustee, while acting as a litigant, should be able to pick and choose the universe of materials that should be maintained for discovery.

### C. The Trustee Cannot Shift His Obligation To Third Parties.

28. The Trustee's alternative to abandonment—requiring Putative Defendants to pay between $10,000 to $50,000 to gain access to potentially relevant documents, then review the voluminous number of documents maintained by AWS, all-the-while paying the ongoing AWS storage fees—is also inappropriate. Effectively, the Trustee is seeking to shift the costs of estate administration, including the Trustee's proposed litigation, to the Putative Defendants.[8] Tellingly, the Trustee has not suggested he would forgo the right to seek additional discovery beyond the Documents already culled by FTI, including any materials transferred to Putative Defendants, thus

---

[8] Alternatively, the Trustee proposes that the government agencies that have also filed suit against the Putative Defendants should incur these costs.

11

imposing on them the burden of reviewing and producing documents back to the Trustee at his request.

29. Even if the Trustee were willing to forgo any future requests involving these Documents, that proposal would not justify his motion. Putative Defendants have the right to seek specific documents from the Trustee. They are not obligated to accept a deluge of irrelevant discovery (and the cost of separating wheat from chaff) simply because the Trustee does not want to partake in that process. *See, e.g.*, *Race Tires Am., Inc. v. Hoosier Racing Tire Corp.*, 674 F.3d 158, 170–71 (3d Cir. 2012) ("[T]here is a 'presumption . . . that the responding party must bear the expense of complying with discovery requests.'") (quoting *Oppenheimer Fund, Inc. v. Sanders,* 437 U.S. 340, 358 (1978)); *Dahl v. Bain Cap. Partners, LLC*, 655 F. Supp. 2d 146, 148 (D. Mass. 2009) ("For all discovery, including electronic discovery, the presumption is that parties must satisfy their own costs in replying to discovery requests.") (citing cases). The Trustee has decided to initiate the Adversary Proceeding against Putative Defendants. The estate must bear the costs of that litigation. *See, e.g.*, *Woodard v. STP Corp.*, 170 F.3d 1043, 1045 n.3 (11th Cir. 1999) ("Under the American Rule, each party bears its own costs in litigation.").

30. Yet, through the Abandonment Motion, the Trustee seeks to permanently discard potentially relevant Documents in order "to avoid future storage costs and any potential unnecessary administrative expenses of the estate." Abandonment Mot. ¶ 11. He contends that the cost of storage to date has been excessive and that future expenses would burden the estate. *Id.* at ¶¶ 9-10.

31. The estate's prior expenses cannot justify the Trustee's motion. First, it appears that a substantial amount of the incurred costs were necessary to effectuate the sale. As such, those costs are not appropriately described as litigation preservation costs, and they are not relevant to

the Trustee's ongoing, post-sale, preservation. Although the Trustee retained FTI to extract data beginning in early 2020, he continued to pay AWS storage costs for months before filing suit against the Putative Defendants. It is unclear what efforts the Trustee made to mitigate the cost of hosting the Documents with AWS during that period. Further, the Sale Order, among other things, obligated the Trustee to maintain the Debtor's documents. The Trustee fails to identify what efforts, if any, he made to mitigate storage costs after entry of that order. Any past inefficiencies cannot now justify the Trustee's proposed abandonment of the very evidence necessary to his newly filed claims against Putative Defendants.

32. This is not simply an argument over costs and benefits. Destroying this potentially relevant evidence would create irreparable harm to the Putative Defendants in the Trustee's case as well as three other ongoing civil and criminal cases. It would be fundamentally unfair to allow the Trustee to choose to destroy potential evidence.

## CONCLUSION

The Trustee has not met his burden of demonstrating that abandoning the Documents is appropriate under these circumstances, and his request for abandonment at this time would constitute an abuse of discretion. *See, e.g.*, *Cult Awareness Network, Inc.,* 205 B.R. at 579 (trustee may not abandon property where abandonment would constitute an abuse of the trustee's discretion). For the reasons set forth in this Objection, Putative Defendants respectfully request that the Court deny the Abandonment Motion and grant any such other and further relief as the Court deems just and proper.

[*Signature Page Follows*]

| | |
|---|---|
| Dated: February 1, 2022<br>Wilmington, Delaware | **FAEGRE DRINKER BIDDLE & REATH LLP**<br>*/s/ Brett D. Fallon*<br>Brett D. Fallon, Bar No. 2480<br>Jaclyn C. Marasco, Bar No. 6477<br>222 Delaware Avenue, Suite 1410<br>Wilmington, DE 19801<br>Telephone: +1 302 467 4200<br>Facsimile: +1 302 467 4201<br>brett.fallon@faegredrinker.com<br>jaclyn.marasco@faegredrinker.com<br><br>-and-<br><br>Joel Hammerman<br>311 S. Wacker Drive, Suite 4300<br>Chicago, IL 60606<br>Telephone: +1 312-356-5060<br>joel.hammerman@faegredrinker.com<br><br>*Attorneys for Jessica Richman*<br><br>**POTTER ANDERSON & CORROON LLP**<br>*/s/ L. Katherine Good*<br>L. Katherine Good, Bar No. 5101<br>1313 N. Market Street, 6th Floor<br>Wilmington, DE 19801<br>Telephone: +302 984 6000<br>Facsimile: +302 658 1192<br>kgood@potteranderson.com<br><br>-and-<br><br>**COVINGTON & BURLING, LLP**<br>W. Douglas Sprague<br>Salesforce Tower<br>415 Mission Street, Suite 5400<br>San Francisco, CA 94105<br>Telephone: +1 415 591 6000<br>dsprague@cov.com<br><br>*Attorneys for Zachary Apte* |