UNITED STATES BANKRUPTCY COURT
DISTRICT OF DELAWARE

IN RE:                          .    Chapter 7
                                .
UBIOME, INC.,                   .    Case No. 19-11938(LSS)
                                .
                                .
                                .
                                .    824 Market Street
           Debtors.            .    Wilmington, Delaware 19801
                                .
                                .    Tuesday, February 8, 2022
. . . . . . . . . . . . . . .    2:00 p.m.

TRANSCRIPT OF ZOOM HEARING
BEFORE THE HONORABLE LAURIE SELBER SILVERSTEIN
CHIEF UNITED STATES BANKRUPTCY JUDGE

APPEARANCES:

For Alfred T. Giuliano,
Chapter 7 Trustee:         Peter J. Keane, Esquire
                           PACHULSKI STANG ZIEHL & JONES LLP
                           919 North Market Street, 17th Floor
                           Wilmington, Delaware 19801

For Zachary Apte:          L. Katherine Good, Esquire
                           POTTER ANDERSON & CORROON LLP
                           1313 North Market Street, 6th Floor
                           Wilmington, Delaware 19801

For Jessica Richman:       Brett D. Fallon, Esquire
                           FAEGRE DRINKER BIDDLE & REATH LLP
                           222 Delaware Avenue, Suite 1410
                           Wilmington, Delaware 19801

Electronically
Recorded By:               Brandon J. McCarthy, ECRO

Transcription Service:     Reliable
                           1007 N. Orange Street
                           Wilmington, Delaware 19801
                           Telephone: (302) 654-8080
                           E-Mail:  gmatthews@reliable-co.com

Proceedings recorded by electronic sound recording:
transcript produced by transcription service.

INDEX

MOTIONS:                                                          PAGE

CONTESTED MATTER GOING FORWARD:

Agenda
Item 1:    Motion of Alfred T. Giuliano, Chapter 7         3
           Trustee, for Order Authorizing the
           Abandonment of Electronic Documents
           Stored with Amazon Web Services, and to Permit
           Third Parties to Preserve Such Documents
           [Filed 12/16/21] (Docket No. 452)


Court's Ruling                                             21


Transcriptionist's Certificate                            25

(Proceedings commenced at 2:00 p.m.)

THE COURT:  Good afternoon.  This is Judge Silverstein.  We're here in the UBIOME case, 19-11938.

I'll turn it over to Mr. Keane.

MR. KEANE:  Good afternoon, Your Honor, Peter Keane of Pachulski Stang Ziehl & Jones for the Chapter 7 trustee, Alfred Giuliano.  Can you hear me all right, Your Honor?

THE COURT:  I can.

MR. KEANE:  Thank you, Your Honor.

So we are here today on one contested motion, Your Honor, it's the trustee's motion for an order authorizing the abandonment of certain electronic documents and data stored with Amazon Web Services, otherwise known as AWS.

Your Honor, this motion was filed on December the 16th, 2021; it's a Docket Number 452.  There is also an Exhibit B to the motion filed separately at Docket Number 453, Your Honor.  And through this motion we're seeking authorization to abandon those documents and data stored on AWS.

The storage at AWS, Your Honor, as set forth in our papers, is currently costing the estate approximately $9,000 per month.  It was previously costing the estate approximately $45,000 per month until about February of 2021 of this year when the data was placed in a process called

cold storage, essentially for documents or data that is not as accessible as it typically would be if it were in regular storage, in order to lower the cost to the estate.

The data that's at AWS, Your Honor, has been preserved pursuant to paragraph 25 of Your Honor's December 2019 sale order that required document preservation of AWS data, but also other company data hosted by other providers, including Google and others.  The document preservation provision in that sale order, Your Honor, was inserted at the request of both the United States through the Department of Justice and the SEC, but also prior counsel to UBIOME's founders, Jessica Richman and Zachary Apte.  I'll refer to them as the defendants going forward, Your Honor, since they are defendants in the trustee's pending adversary against them in this court.

Your Honor, to be clear, the motion only seeks to abandon the AWS data; it is a subset of overall documents being preserved.  The company regular corporate books and records, company emails and other key documents are not being abandoned, and those have either been backed up separately by the trustee or separately hosted by other providers such as Google.

After this motion, Your Honor, was filed, we received four informal responses initially.  We adjourned the hearing twice to try and resolve those.  And we were able to

resolve all of them except for those of the objection of the defendants.

The other parties included the U.S. Trustee, Blue Cross/Blue Shield, Massachusetts, and the United States through the DOJ and the SEC.  The U.S. Trustee and the Blue Cross parties had some clarifying questions, which we were able to resolve, about AWS and what we were seeking to preserve, primarily for personally-identifying information and making sure that that would be deleted if the abandonment were permitted.

The DOJ also had some more detailed questions regarding the AWS documents and Exhibit B to the motion, which is what we call the manifest, essentially an inventory list that FTI has prepared that lists the various buckets of data, which is essentially how it's organized on AWS buckets of data, and for different types of data.

FTI prepared that list as it went through rendering services to the trustee following the sale, as it had to transition some of the IP assets that the buyer purchased and which were located on AWS over to the buyer.

We did a call with the DOJ in early January.  DOJ and FTI investigators were on the call and given an opportunity to fully ask any questions that they wanted about the manifest, the documents that are on AWS.  And participating was -- FTI participated in the call as well.

Following that call, the DOJ and SEC declined to take any further action and said they wouldn't be closing any sort of abandonment of the AWS data and documents.

The defendants also reached out informally and we did attempt to resolve -- resolved our concerns.  We had a call with them earlier in January and, shortly before that call and then again afterwards, the defendants did send us a series of questions regarding additional information that they wanted about the AWS data and documents.  And those are set forth both in the trustee's reply, but also the defendants' objection.  I think it's Mr. Fallon's declaration that attaches the requests and that lists the questions.

And, Your Honor, I think it's important to list those, and I'll explain why.  The questions that the defendants asked us to explore further and answer for information that's on AWS are, first, for each bucket that's listed on the manifest or inventory list, provide the total size of the information referenced; two, for each bucket that exceeds one terabyte, provide the defendants with a list of the files contained in that grouping; and, three, list the file size, file name, file path, and any metadata or other identifying information associated with those files.

Your Honor, we did in good faith obtain an estimate from FTI for that particular work that would need to be done and we were told it would cost approximately $40,000

just to get the answers to the questions.  And the reason -- part of the reason for that, Your Honor, is the sheer size of the data that's stored at AWS.  And, just to give Your Honor a sense of scale, the AWS data is 424 terabytes.  One terabyte, Your Honor, is about 500 hours of HD video.  So, Your Honor, that works out to about 24 years of high-definition video or 2.7 billion pages of documents such as Word files or PDFs and the like that we typically see in discovery.

Your Honor, unfortunately, we weren't able to agree to incur those additional expenses given that we were trying to reduce expenses for the motion, and we believe it's appropriate to reduce further administrative expenses in seeking to abandon these documents.  It provides no benefit to the estate, it constitutes a burden to the estate; the trustee has no use for it.  And as a practical solution to the defendants the trustee is more than willing to give them the keys and let them explore how they want to and when they want to, and to reduce the burden on the estate.

The defendants have asserted in their objection two overall points, and I'll just go through those quickly, Your Honor.

The first argument the defendants make is that the trustee has an obligation to preserve the documents under the sale order.  The sale order was clear regarding document

preservation, but it did preserve the trustee's rights to seek abandonment.  And we believe the defendants here are using that preservation requirement as a sword to require the trustee to spend estate funds to do the defendants' own investigation into AWS, despite the trustee's offer to give them full, unrestricted access to AWS to search it.

And so the question in my mind, Your Honor, is where does the preservation duty stop and does it override Section 554 abandonment no matter the cost to the estate? When a plaintiff believes that it no longer needs documents and is willing to hand them over to a defendant, can the defendant force more litigation costs onto the plaintiff by requiring the plaintiff to hold those documents in perpetuity?  And, granted, I don't -- I'm under no illusion it would be in perpetuity, but essentially, Your Honor, they want us to spend a significant amount more -- significantly more money to get answers to their questions.

The second main argument in the objection, Your Honor, is that the trustee can't shift the burden of those costs onto others.  Now, if the trustee wanted it both ways, I think the defendants' objection might have some merit.  If the trustee was not abandoning the AWS data, but in response to a discovery request he demanded the defendants pay the costs for document copying and retrieval, then the cost-shifting scenario there is not appropriate -- the cost-

shifting in that scenario is not appropriate.

But here the trustee -- first, he doesn't believe that the AWS data benefits the estate based upon what -- the investigation FTI has done, which is a high level investigation to produce that manifest. We understand that it is not a fly-specking of every single bit of data or every single folder that's within that stuff, but, given the sheer size, FTI went through and produced that manifest as an inventory list to give a sense of what's in each of those buckets. And, two, Your Honor, the trustee is willing to open the doors to the defendants to have full access to conduct their own review.

So we believe the defendants here are trying to have their cake and eat it too. On one hand, they want to force the trustee to hold AWS data for an indefinite period and argue that since we are fully aware of everything, every single folder on AWS that it has to be preserved, but on the other hand they want to stick their heads in the sand when the trustee gives them an open opportunity to explore AWS and find whatever the defendants think is appropriate. And --

THE COURT: What does that mean? What does that mean that you're giving them an open opportunity?

MR. KEANE: Well, Your Honor, if there's a method -- as I understand it from FTI, there's a method to give them user access to AWS. They said they'd be able to go in and

have the same type of access that -- essentially, that FTI does now or the trustee does now to be able to go in there and look around, and see and find documents that they might think is appropriate.  We wouldn't get in the way of doing that.  So --

THE COURT:  So, presumably, it would cost them $40,000 as well to do the search that --

MR. KEANE:  Presumably, yes.

THE COURT:  -- those three questions that were asked.

MR. KEANE:  Assuming all things are equal, Your Honor, correct, it would cost them approximately 40,000.  And that's kind of where the impasse is here, Your Honor.  We're trying to avoid further costs, but there's no -- the frustration is, even though we might -- even if we go down this path and spend the money, estate money, to get the answers to their questions, there's nothing that says the defendants come back and say, well, that's great, we now understand more, but no thanks, and then the estate just spent $40,000 for nothing when we're giving them the opportunity to go in and do their own investigation.

So the estate is at an impasse here and we're left with, you know, no choice but to be forced down this path when we don't -- the estate doesn't want to spend any more money.

THE COURT:  Well, I understand that, but the estate also sued them.  So, you know, I'm not sure -- as I read through this, I'm not sure, is this an estate abandonment issue or is it really just a litigation situation where, as you said, it's a second sort of thing where the trustee has sued two defendants and they're saying don't destroy documents, we're at the beginning of litigation.

MR. KEANE:  We understand that, Your Honor.  From the trustee's perspective, the complaint that's pending is a rather simple complaint, it's two counts.  It's not to say that there might -- the defendants might want documents or they might need documents that they think are relevant --

THE COURT:  Uh-huh.

MR. KEANE:  -- to their defense, but from the trustee's perspective -- and that's where the opportunity that we've offered to them comes in, they're more than welcome to go in and explore that.  But, from the trustee's perspective, it doesn't think that anything in there warrants anything that the estate needs for either the litigation pending or general administration of the estate.

This is a little bit different situation, Your Honor, because I think, if we assume that all the corporate records, all the corporate emails, all the company information was all stored at AWS, there would naturally be concerns about privilege.  If we were in litigation and the

trustee were served with document production requests, we wouldn't be able to make this same argument, I think, because we would be naturally concerned about privilege.  We would have to respond to a document request, we would have to cull through those documents for privilege, produce a privilege log, if that applied, and it would be the trustee's burden to go through and search that information in response to a discovery request.

But here we're not going -- the trustee has offered to not act as any sort of gatekeeper in a typical litigation discovery scenario.  I mean, typically, the defendants would be relying on the trustee in good faith to go through and do the document search.  They would provide search terms, we would go down that path and produce the documents, and they would be relying on us to say that, yes, these are the documents that are responsive to your request.  But here what we're saying is we don't even have to do that.  The trustee is not going to serve as a gatekeeper, please go and have full access to AWS and search whatever you want to search.  And everything else that we're concerned about in terms of privilege or anything else, it's not being abandoned and it's not subject to this motion.

So that's where we are with our dilemma here, Your Honor.  So I think I've reached the end of my argument, Your

Honor, and I'll just reserve some brief time to reply, unless Your Honor has questions.

THE COURT:  Not yet.

MR. KEANE:  Okay.

THE COURT:  I may have some.

Let me hear from whoever is going to take the next -- the lead.

Mr. Fallon?

MR. FALLON:  Good afternoon, Your Honor, Brett Fallon of Faegre Drinker Biddle & Reath, representing Jessica Richman, although I believe my arguments will likely apply to Dr. Apte as well.  Dr. Apte's counsel is here and can speak on his behalf, but I think I'll probably be covering most of it.  I do make a limited appearance here and reserve all our rights.

So, as Mr. Keane noted, this bankruptcy case was originally filed in September of 2019.  The sale was approved in December of 2019 and then we're almost two years later, at the eleventh hour, the trustee sued the putative defendants for two things, breach of fiduciary duty and breach of their employment contracts.

Now, Your Honor, we did note in our objection that we questioned how closely the trustee researched its own records and the complaint because the trustee's complaint shows an amazing resemblance to the complaint brought by the

SEC, they're almost verbatim the same thing.  Both complaints allege that the debtor misled physicians -- or, in particular, our clients led the debtor to mislead physicians to order and insurers to pay for the UBIOME test, and that the putative defendants then misled investors to invest in the debtor based upon fraudulent billing practices.

So, as Your Honor knows, the adversary proceeding is in its infancy.  Discovery has not started at all and the trustee is now arguing that the records are not necessary for the administration of the estate.  However, that obviously is not the case.  The trustee is the plaintiff in this action and is seeking to recover $25 million from our client.

So I will note that initially, Your Honor -- and I do think that this motion is very premature -- there really are no facts in the record and that is because the trustee really doesn't have any facts.  We don't have any testimony or anything really in evidence.  We do have Exhibit B to the original motion.  We don't really have the testimony of anybody who says that they did it or it was done under their supervision or that it's even accurate.  I'm presuming FTI did it.  And I did look through the motion papers, I didn't really see that.  Maybe AWS did it, maybe someone from the debtor did it, maybe the lawyers did it, we just don't know.

And, while it is not in evidence, as Mr. Keane noted, we did ask for some very elementary information to try

to get started to break it down, really doing what the trustee should have done, and that is asking about the -- you know, the total size of each bucket -- I think there's 24 buckets or 26 -- a list of the files.  I mean, as Your Honor can see from Exhibit B, to the extent that it is even accurate, you know, these are very, very generic labels and to try to figure out, you know, what the 500 terabytes or whatever the number is based upon these descriptions, you know, to the extent that they're accurate, you might not even have them because they're just not very informative.

So, you know, we wanted some of the file names, we wanted, you know, the size of the files and some of the metadata to try to break it down, and we were happy to work with the debtor -- or with the trustee from there.

So my point here, Your Honor, is that we really don't know much about what's in these documents and neither does the trustee, but the little that we do know -- and the admissions are very telling -- is that the material they're seeking to abandon is likely helpful and beneficial to Drs. Richman and Apte.  Paragraph 10 of the motion concedes as much.  And in paragraph 23 of the reply the trustee concedes, quote, "Admittedly, the AWS documents could benefit the defendant," unquote.

And in that same paragraph, I think as the trustee would have to concede, the trustee expected other parties may

wish to preserve the documents.  And a cursory review of Exhibit B, again, assuming it's accurate, shows that it is highly likely that these files are relevant to the litigation.

The complaints, both the SEC and the trustee complaint, are about whether patient tests and the billing was justified.  So billing data and billing practices and the billing database and all of its technical details may very well be very important to the defense of these complaints and that's the type of information that's in there, and there's also information on UBIOME's website and blogs.  And, again, this is if the descriptions are accurate, we're obviously looking at it from, you know, 50,000 feet, maybe a 100,000-foot level.

So the point is that these documents, from what little we know and what they have conceded, are relevant to the pending litigation that the trustee has decided to bring. And I don't want this point to be missed, but barely mentioned -- and Mr. Keane did mention it in his argument -- we had asked for a listing or accounting of what records the trustee did keep, and all we have in their statement in paragraph 8 of their motion is that they kept certain generic categories.  Basically, they kept the stuff they thought was important to them, but we really don't have any information on what that is and what the criteria would be used and was

that pulled from this database, and a number of other questions.

So we really don't know much of what they kept, we don't know much about what they're seeking to abandon, and that's why I say that the motion at this point is very premature.

So where does that leave us now?  So I think the case law is very clear, Your Honor.  A litigant, and including the trustee -- I'm not aware of any cases that exempt the trustee from the position that any other litigant would be -- a litigant cannot destroy potential evidence in advance of discovery, particularly here in, you know, some of the more recent -- or it feels more recent -- amendments to the discovery rules, it has to be -- you know, the discovery has to be equivalent or that sort of thing.  Well, here, the trustee is seeking to recover $25 million from our clients.

So the cases are clear, as cited in paragraphs 18 and 19 of our objection, that a party has a duty to preserve evidence it knows or reasonably should know is relevant to the action.  And the cases cited in paragraph 29 of our objection is that it is the party who has the material, the party who is bringing it, the party who is in its custody and control, must bear the expense of complying with discovery requests.

Now, we're not going to make them keep everything

for all time.  We're happy to work with the trustee, but just where this case is now, where the motion is being brought, we're really at a very, very premature state.

With respect to Section 554, we're not aware of any cases and the trustee has not cited any cases that supersede the rule that require a litigant to maintain documents that it has.  And I also noted, even in some of the cases that they mention that -- they mention the Supreme Court case of MidAtlantic, which they said gives the trustee unfettered discretion to discard documents with very limited exceptions.  And I pulled that up because I was surprised at the language and the portion that they cite on page 501 pretty much does the opposite.  It says when Congress enacted Section 554 there were well-recognized restrictions on a trustee's abandonment power.

In codifying the judicially-developed rule of abandonment, Congress also presumably included the established corollary that a trustee could not exercise this abandonment power in violation of certain state and federal laws.  The normal rule of statutory construction is that if Congress intends for legislation to change the interpretation of a judicially-created concept it makes that intent specific.

So there's nothing unfettered about that.  The litigant and a trustee as a litigant has an obligation to

preserve documents and ESI as any other litigant does.  The trustee's proposed compromise, offering the putative defendants the right to review the material it seeks to abandon, does not absolve him of his obligations as a litigant.

And, Your Honor, I do -- and, again, part of the reason it's premature -- I'm not sure that the trustee would be -- that it's really going to work.  I mean, there is undoubtedly a significant amount of private health information in there that we're going to have to work through.  I don't know that the trustee or any of the other -- the United States Trustee or any of the other governmental entities want us going through a lot of private health information.  There are obviously a lot of issues to be worked out with respect to -- with respect to those issues.

The trustee told the putative defendants that if they were willing to pay the 40,000 to retrieve the documents from storage, they could perform a high level review and then request the documents.

So this isn't how discovery is supposed to work, Your Honor.  The trustee is a plaintiff in the action, the trustee is presumably bringing this action for the benefit of the estate, and the trustee has an obligation like any other litigant.  He can't absolve himself of all future discovery obligation by requiring the putative defendants to pay for

the privilege of searching through 500 terabytes of the trustee's own information.  The trustee has an obligation to preserve documents that are reasonably anticipated to lead to the discovery of admissible evidence and (indiscernible) seeking $25 million.

As I say, we're not seeking to burden the trustee with an indefinite obligation to hold irrelevant documents. If the trustee can demonstrate to us the buckets of information that are obviously irrelevant, we're not going to oppose abandoning those documents or records, but the trustee, like any other litigation -- rather, any other litigant, has to preserve those documents and the trustee has to make a showing that the documents are not relevant to this litigation.  If he can make that basic showing that the information is not relevant, then we're not going to oppose abandonment, but he hasn't asked for -- he hasn't made that showing at this point.

So, Your Honor, we would ask that the Court deny the motion and we're happy to go back and continue our discussions with the trustee.

THE COURT:  Thank you.

Ms. Good, do you have anything to add?  You're muted.

MS. GOOD:  I'm sorry, Your Honor.  Nothing further to add.  I would join in Mr. Fallon's argument.

THE COURT:  Okay.  Thank you.

Mr. Keane?

MR. KEANE:  Your Honor, just briefly on reply.

I think what I've heard and what I've read from the defendants is, one, I think it's not disputed that the AWS data no longer benefits the estate.  It may benefit the defendants, but it doesn't benefit the estate.  Number two, that the storage of the AWS data is costing the estate money.

So, under Section 554, it meets the abandonment standard and as a practical way to resolve the preservation requirements, which is perhaps separate and apart from that standard or is butting up against that standard in this situation, is letting the defendants go in and access whatever they want to access, so that the estate doesn't have to bear that cost.

So that's all I have to say on reply, Your Honor.

THE COURT:  Thank you.

Well, this is an interesting issue that I haven't had to deal with before in terms of abandonment versus the requirement that a litigant retain documents that are relevant to the litigation that it's brought.  And I agree with Mr. Fallon that this is premature, the motion is premature and/or I'll deny it without prejudice.

The benefit to the estate is an interesting argument, but presumably the litigation benefits the estate

and a cost of the litigation is to preserve documents.  And I don't have information, enough information to know whether these documents are relevant to the litigation or not.  I did look at Exhibit B.  I'll confess, it means nothing to me, and I'll confess my lack of e-discovery savvy.  The most analogous situation you could tell me is it's X number of banker boxes in a warehouse, that I get.  So -- but, you know, terabytes and whatever is not my thing.

But I think these descriptions, whether it's a file, an electronic file or a box, these descriptions are not sufficient for the defendants to know or for me to know that in fact this information is not relevant to the litigation. And the fact that the trustee may think it doesn't benefit the estate is not the end-all and be-all because it is a litigant now and chose to be a litigant.

So I will deny the motion without prejudice or I'll carry it, either one, but I do not have facts in front of me that tell me what kind of searches were done, what kind of information are in these documents -- or what kind of information these electronic documents contain, and I'm not comfortable letting them be abandoned and I at this point do not think the expense has to be shifted to the defendants. There may come a time where that's appropriate, once people know what the documents are, and then we can apply the case law that talks about shifting expense of discovery, but I

don't think we're there yet.

And I certainly wouldn't want the trustee to be in a position where there's a spoliation argument, which I would not rule out even if I permitted abandonment.  So I think we have to have a handle on what these documents are.  They've been held for two years and it surprises me that during that time we don't have what I would consider to be a real inventory of what those documents are.

Once we're in a position to know what the documents are, I've heard from Mr. Fallon that they're not going to be pressing arguments that documents that are irrelevant to the litigation have to be preserved, I take him at his word for that, but I think the first thing we need is some factual information about these documents, how they've been kept, what's in them, what this inventory means, to the extent it's an inventory, or some further detail.

So, again, I'll either deny it without prejudice or I'll carry the motion, but I do think it's premature.  And I do not think the abandonment statute means that a trustee can bring litigation, then seek to abandon documents before, I think, the defendants are even served, much less discovery has been sought, and try to shift that burden onto the defendants.  And at least I didn't see any case law in what was filed that suggests that that's the appropriate balance and my sense is it is not.

So, for those reasons, I'll leave it up to you, Mr. Keane, which way you want to go with it.

MR. KEANE:  Well, since you're giving me the choice, Your Honor, it may be more economical to just carry the motion and adjourn it to a date to be determined.  We can -- you know, if we get to a point where we're -- you know, another dispute arises, we'll notice it up for a hearing -- or, if we reach agreement, we can submit something under certification that permits the abandonment, you know, if we get to a point where the defendants have what they need and we can move forward.  So --

THE COURT:  That's fine.  Then we'll carry it and you can either let us know that you have a resolution and submit a stipulation, which could include abandonment of some documents and not of others, whatever your resolution is, or it can be teed up again.  And, again, at any teed-up hearing, I'm going to need some factual information and a witness about what these documents are and whatever the remaining dispute might be.

So we'll carry it until we hear from you.

MR. KEANE:  Understood.  Thank you, Your Honor, for your time today.

THE COURT:  Thank you.  We're adjourned.

MR. FALLON:  Thank you, Your Honor.

        (Proceedings concluded at 2:35 p.m.)

CERTIFICATION

I certify that the foregoing is a correct transcript from the electronic sound recording of the proceedings in the above-entitled matter to the best of my knowledge and ability.

/s/ Tracey J. Williams                    February 15, 2022

Tracey J. Williams, CET-914

Certified Court Transcriptionist

For Reliable